[Civ. No. 3019. Fourth Dist. May 20, 1942.]

SHELL OIL COMPANY, INCORPORATED (a Corporation) et al., Respondents, v. EDWARD R. RICHTER, Defendant and Appellant; W. B. POOLE, as Receiver, etc., Intervener and Appellant.

Roy Daily and Benjamin D. Frantz for Appellants.

Mortimer Kline, McCutchen, Olney, Mannon & Greene and George Harnagel, Jr., for Respondents.

BARNARD, P. J.—This is an appeal from a judgment enjoining the operation of an oil well.

The appellant Richter owned an oil lease on lands which adjoined leasehold lands held by the respondents. In 1933, he drilled at a point about 21 feet from the respondents' lands, but not encroaching thereon. He went down 1,900 feet but found no oil. Thereafter, he subleased to one Adams who, with his associates, drilled a well by using the top 100 feet of the dry hole drilled by Richter and then whipstocking so that the well trespassed on the respondents' properties. When completed, this well was 1,780 feet deep and all but the top 230 feet thereof was under and within the respondents' lands. This well was placed on production in April, 1934, and it produced 223,000 barrels of oil between then and January 27, 1937, when production was stopped. In June, 1934, Richter brought a suit against Adams to terminate his interest in the sublease on the ground that the required payments had not been made, and recorded a *lis pendens*. Two judgments in that case have been reversed (*Richter* v. *Adams*, 19 Cal. App. (2d) 572 [66 P. (2d) 226] ; *Richter* v. *Adams*, 43 Cal. App. (2d) 184 [110 P. (2d) 486]) and, so far as here appears, Richter's right to the possession of the land upon which the well is surfaced has not yet been finally determined.

On September 15, 1935, section 349¾ of the Code of Civil Procedure became effective. On March 3, 1936, these respondents commenced separate actions against Adams and his associates to enjoin the operation of this well insofar as it trespassed upon their lands. These actions were consolidated for trial and on March 20, 1937, a judgment was entered perpetually enjoining Adams and his associates from operating this well below a measured depth of 233 feet. This judgment became final and on January 27, 1937, the well was closed down and any operation thereof ceased.

The well remained closed down for some 20 months and on September 26, 1938, Richter again placed the well on production and began to operate the same. On October 4, 1938, the respondents brought the present action to enjoin Richter and his agents from the further operation or production of said well within the boundaries of their properties and from the further taking of oil or similar substances from their properties through or by means of said well. The court found in all respects in favor of the respondents and this appeal followed.

The main question presented is whether this action was barred by the provisions of section 349¾ of the Code of Civil Procedure, which limit the time within which actions may be begun which are based upon trespasses arising from the whipstocking of oil wells. This section provides, in part:

". . . as to wells heretofore . . . drilled, the cause of action shall be deemed to have accrued ten days after the time when the well which is the subject of the cause of action was first placed on production.

"Notwithstanding the continuing character of any such act, there shall be but one cause of action for any such act, and the cause of action shall accrue as aforesaid."

It clearly appears that the producing portion of this well lies entirely within the respondents' lands and the appellants make no contention to the contrary. It also clearly appears that Richter had nothing to do with the operation of this well, directly or indirectly, until Steptember 26, 1938, and that prior to that time he had committed no act of trespass in connection with the respondents' lands. He bases his entire claim upon the contention that there can be but one continuing trespass so long as this oil well remains as an invasion upon respondents' lands, that section 349¾ of the Code of Civil Procedure permits but one action on account of such a

trespass, that since one action has already been prosecuted without making him a party thereto any further action is barred by this statute, and that it is beyond the power of the courts to interfere with his taking oil from within respondents' lands so long as he takes it through this well.

In effect, Richter contends that respondents' cause of action as against him was barred by this statute several years before it arose. ▆ Richter was not legally responsible for the wrongful acts of his lessee, Adams, which were involved in the prior injunction suit. (*O'Leary* v. *Herbert,* 5 Cal. (2d) 416 [55 P. (2d) 834].) Richter did nothing which gave the respondents a cause of action against him until long after a judgment in the former injunction action had become final and long after 180 days had expired after the effective date of this statute. While it may be conceded that the respondents should have made Richter a party to their action against Adams if they had then had a cause of action against Richter, they had no such cause of action at that time. ▆ Injunctive relief is a remedy and not, in itself, a cause of action, and a cause of action must exist before injunctive relief may be granted. (*Williams* v. *Southern Pac. R. R. Co.,* 150 Cal. 624 [89 Pac. 599].)

▆ The appellants contend that the installation of oil well casings upon the respondents' lands is an injury or trespass of a permanent nature and exactly similar to the building of railroad tracks over the lands of another and operating trains thereon, which was considered in *Williams* v. *Southern Pac. R. R. Co., supra.* So far as the interference with land is concerned there is a great difference between the construction of railroad tracks over the surface thereof and the continuous operation of trains thereon, and the placing of one string of oil casing underneath a parcel of land. In the latter case, so far as material here, the only substantial injury comes from the use of the well in drawing oil from the land. In this case, the well was thus used by Adams and this use ceased when Adams was enjoined from continuing the trespass. In fact, Adams was ordered to plug up the hole so that it could not be further thus used but this was never done. Later, Richter, who was not affected by that injunction, again put the well on production. We have no hesitation in holding that this was a separate act of trespass which could be enjoined unless this is prevented by the provisions of section 349¾.

The respondents' cause of action against Richter did not

arise until September 26, 1938. Under appellants' contention, that cause of action was barred long before it arose. If section 349¾ must be construed in accordance with appellants' contentions it would have to be held to be unconstitutional insofar as its application to this case is concerned. (*Feeney* v. *Hinkley*, 134 Cal. 467 [66 Pac. 580, 86 Am. St. Rep. 290] ; *Callet* v. *Alioto*, 210 Cal. 65 [290 Pac. 438].) It is well settled, however, that where a statute would bear any other reasonable construction than one under which it would be unconstitutional such other construction should be adopted. (*Geimann* v. *Board of Police Commissioners*, 158 Cal. 748 [112 Pac. 553].)

 Section 349¾ does not create a cause of action but merely limits the time within which a suit may be started upon an existing cause of action. It provides a limit of 180 days, after the cause accrues, for filing an action for relief based upon the whipstocking of an oil well whether the relief asked be in the nature of abatement or compensation for oil removed. It is then provided that notwithstanding the continuing character of "any such act," which means the existing trespass and includes both the presence of the well and the removing of oil by means thereof, there shall be but one cause of action for "such act." That means that there shall be but one suit for the cause of action then existing and arising from "such act" of trespass, including the original unlawful entry and the continuing presence of the well and removal of oil. It is then provided that this one cause of action, for such act of continuing trespass, shall be deemed to accrue 10 days after the well is first placed on production. This can only mean 10 days after the well is placed on production in such a manner as to give rise to a cause of action on account of the removal of oil as this is specifically made a part of the continuing trespass, the relief of which is limited to the one action. All of this relates to the continuing trespass, including the removal of oil, which gives rise to that cause of action which then exists and which accrues 10 days after first production. The only cause of action then existing is one against those parties who have committed and are committing "such act" of trespass. It is this act, trespass and cause of action, to which the section relates.

 This is the reasonable construction of section 349¾ and this is in line with the purpose expressly stated in the statute

adopting that section. (Stats. 1935, p. 2285.) That purpose is to secure a speedy determination of the rights of parties, where wells trespass upon adjoining lands, in order to subserve the public interest in the use and conservation of oil and to prevent a multiplicity of unnecessary suits. The purpose was to determine speedily whether those in charge of such wells had a right to operate them in the manner in which they were drilled, and not to settle any controversy as to which persons are entitled to possession of such wells or how long they might remain in possession. It follows that when it is determined that the parties in charge of the well had no right to operate it, it could not have been intended either to give someone else a right to operate such a well or to forbid another action brought to prevent another and different party from committing a new trespass by again operating the well, the operation of which had already been enjoined.

The time limit provided by the portion of this statute which is involved here is placed upon and based upon an existing cause of action and it in no way appears that it was intended to bar any future cause of action which did not then exist. It was intended to apply to those persons who were then guilty of a trespass which gave rise to a cause of action, which would usually be those who then owned or were operating the well. Doubtless the judgment rendered in the one action allowed for that trespass would be binding on all persons claiming under the parties to such action. But nothing in this statute purports to make such a judgment binding on one who claims adversely to the trespassing party and who later succeeds, through foreclosure, cancellation or other adverse action, to the original rights of the trespassing party, through which he was enabled to commit the trespass. And it was never intended to permit a new and different trespasser who was not involved in and not bound by the original proceeding to come in and render that judgment ineffective by a new and different act of trespass which should be beyond the reach of, and even sanctioned and protected by, the law.

The purpose and intent of the statute is to cover and relate to an action for what may be called the original trespass, though that be a continuing one, and to parties whose acts in connection with that trespass have given rise to a cause of action in which it may be determined whether or not the

well in question constituted an underground trespass on the land of another. ■ But when such an action has been filed and it has been finally adjudicated therein that the well constitutes a trespass and may not be operated, and the well has been shut down pursuant to that judgment, it was not intended to authorize and invite other and different trespasses by other parties. It was never intended by the statute to permit someone who was not bound by the judgment and against whom no cause of action had then existed to reopen a well which had been ordered closed, and to take with impunity from the land of another oil to which he had never been and to which he could not otherwise be entitled. Such an act constitutes a new trespass which was not within the purview of the statutory provisions relating to the original trespass, and gives rise to a new cause of action which did not previously exist and which was not within the statutory limitation that there shall be but one cause of action for "any such act" as was covered by the statute. In such a new trespass by Richter this well "was first placed on production," insofar as a cause of action against him is concerned, on September 26, 1938, and the present action was begun less than 10 days thereafter. It follows that this action was not barred by the provisions of section 349¾, as properly construed.

Most of the other points raised by the appellants require no consideration in view of our decision on the main issue presented. Some contention is made that there is no evidence to support the court's finding that Richter again placed the well on production on September 26, 1938, it being contended that the evidence shows that the well was then placed on production by W. B. Poole, acting as a receiver, having been appointed as such in the action brought by Richter against Adams. Poole was Richter's brother-in-law and the evidence amply supports the finding that the well was again placed on production by Richter, and fully justifies the inference that anything done in that connection by Poole was done in his personal capacity and with the purpose of aiding and assisting Richter. ■ It is further argued that the court erred in denying a motion to dismiss the action, which motion was based on the ground that any judgment entered would interfere with the operations of Poole as the receiver appointed in *Richter* v. *Adams,* and on the ground that no permission had been sought or obtained to bring the action against Poole, as receiver. The same court had appointed Poole as

receiver in the other action, there is nothing in this record to show that Poole was authorized as such receiver to operate the well, and the record would indicate that he had no such right especially in view of the existing injunction. In any event, Poole, as receiver, was not named as a defendant in this action as filed. He voluntarily appeared and asked for and received permission to intervene. However, he filed no complaint in intervention or other pleading, although he joined in the motion to dismiss the action and in the notice of appeal. Moreover, the court found that Poole, as receiver, was not in possession of said well at any time subsequent to September 21, 1938, and that he was not then authorized to operate said well or produce therefrom. Insofar as shown by the record, there was no interference with a receiver and no reversible error appears in this connection.

The judgment is affirmed.

Marks, J., and Griffin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 16, 1942.