[Civ. No. 23841.   Second Dist., Div. Two.   Aug. 26, 1959.]

GUY N. STAFFORD, Appellant, v. UNION OIL COMPANY OF CALIFORNIA (a Corporation) et al., Respondents.

Guy N. Stafford, in pro. per., for Appellant.

L. A. Gibbons, Douglas C. Gregg, A. Andrew Hauk and George C. Bond, for Respondents.

HERNDON, J.—Plaintiff appeals from a judgment which followed an order sustaining a general demurrer to his fifth amended complaint without leave to amend. By this pleading plaintiff attempted to allege a cause of action for the taking or removing of oil and gas from land in which plaintiff claims an interest by means of a slant drilled well having a surface location on adjoining land. By its demurrer, defendant invoked the provisions of section 349¾ of the Code of Civil Procedure, the statute of limitations applicable to causes of action arising from underground trespass, conversion, or the taking or removal of oil, gas, or other liquid or fluids ". . . by means of a well drilled for oil or gas or both from a surface location on land other than real property in which the aggrieved party has some right, title or interest . . ." The trial court's ruling was based upon a holding that plaintiff's action was barred by said statute.

It is apparent that the question of the statute's application to the pleaded cause of action is a pure question of law, the decision of which must rest upon an analysis of the facts

which plaintiff has alleged, the character of the rights which he asserts and the nature of the relief which he seeks. Accordingly, all the essential allegations of the fifth amended complaint must be considered and accepted as true.

It is alleged on information and belief that one of defendant's oil wells, hereinafter referred to as the "subject well," drilled prior to 1931 with a surface location on defendant's land, was drilled at such an angle of departure from the vertical that it reached under adjacent land, hereinafter called the Athens lots, in which plaintiff claims an interest, and that by means of this well defendant removed substantial quantities of oil and gas from said adjacent land.

The complaint alleges that the subject well was in production on defendant's land on June 1, 1944. On June 1, 1944, defendant Union Oil Company obtained its rights as lessee of the Athens lots by an oil and gas lease executed by the then owners. Plaintiff describes his interest in the Athens lots as "one-fifth of the lessors' royalty rights" acquired by assignment in the latter part of April, 1957. It is the theory of the complaint that after 1944, by the operation of the subject well on their own land, defendant removed oil and gas from below the Athens lots and that by virtue of the covenants of said oil and gas lease plaintiff is entitled to obtain from the defendant Union Oil Company a subsurface survey to establish the true course of the well, together with an accounting for the oil and gas allegedly taken from the Athens lots by means of said well.

The fifth amended complaint further alleges in substance as follows: (1) that by the terms of said lease defendant agreed to pay the lessors as a royalty the money value of a specified percentage of all oil and gas removed from the leased premises during the 20-year term of the lease and as long thereafter as oil and gas is produced in paying quantities; (2) that the terms of said lease "did not restrict the defendant Union Oil Company, in its manner or method of removing and saving oil and gas from said premises"; (3) that subsequent to June 1, 1944, defendant has removed "considerable oil and gas from the sub-surface" of the land described in the lease by means of the subject well situated about 100 feet beyond the boundary of the leased land; (4) that defendant has rendered no statements and has paid no royalty to said lessors for the oil and gas so removed; (5) that defendant has never repudiated any of the covenants of the lease, and that the lessors have not "heretofore" demanded an account-

ing; (6) that at all times prior to April 1, 1957, the lessors believed that defendant "had faithfully rendered statements and paid royalty to them upon all oil and gas it removed and saved from the premises"; (7) that all the oil wells situated in the field in which defendant's well is located "had a marked tendency . . . to drift north" and that defendant knew of this tendency but the lessors were never so informed and never knew this fact; (8) that "insofar as plaintiff knows" defendant has never caused a directional subsurface survey to be made of the subject well, and that defendant "knew and knows that there is a strong probability that its oil well . . . drifted north for a considerable distance in the drilling thereof . . ." and since June 1, 1944, "has been producing from beneath the surface" of the leased land; (9) that at no time prior to April 1, 1957, did lessors "suspect" that the subject well was producing from the subsurface of said leased premises.

The prayer of the complaint is (a) "For an order requiring a directional subsurface survey of said oilwell H.P. 27 to be made by defendant Union Oil Co." and (b) "For an order requiring defendant Union Oil Co. to render an accounting to fix the sums of royalty due from the production it has obtained from said oilwell H.P. 27, and to pay royalty thereupon."

It affirmatively appears from an exhibit incorporated into plaintiff's second amended complaint that the subject well had been placed in operation sometime prior to February 7, 1931. It also is to be especially noted that plaintiff has made no allegation that either the alleged slant drilling of the subject well or the removal of oil and gas from the adjacent land by means of it was "knowingly committed with actual intent."

Section 349¾ of the Code of Civil Procedure became effective on September 15, 1935.[1] So far as here material, it provides:

"Within one hundred eighty days: (a) An action to enjoin, abate, or for damages on account of, an underground trespass, use or occupancy, by means of a well drilled for oil or gas or both from a surface location on land other than real property in which the aggrieved party has some right, title or interest or in respect to which the aggrieved party has some right, title or interest. (b) An action for conversion or for the

---

[1]The constitutionality of the statute was upheld in *United States* v. *Standard Oil Co. of California*, 21 F.Supp. 645 (S.D. Cal. 1937), aff'd 107 F.2d 402 (C.C.A. 9th, 1939), cert. den., 309 U.S. 654, 673 [60 S.Ct. 469, 84 L.Ed. 1003] (1940); see Note 12 So.Cal.L.Rev. 471-473 (1939).

taking or removing of oil, gas or other liquid, or fluids by means of any such well. When any of said acts is by means of a new well the actual drilling of which is commenced after this section becomes effective, and such act was knowingly committed with actual intent to commit such act, the cause of action in such case shall not be deemed to have accrued until the discovery, by the aggrieved party, of the act or acts complained of; but in all other cases, and as to wells heretofore or hereafter drilled, the cause of action shall be deemed to have accrued ten days after the time when the well which is the subject of the cause of action was first placed on production. Notwithstanding the continuing character of any such act, there shall be but one cause of action for any such act, and the cause of action shall accrue as aforesaid. . . . This section shall apply to causes of action existing when this section becomes effective. The time for commencement of existing causes of action which would be barred by this section within the first one hundred eighty days after this section becomes effective, shall be the said first one hundred eighty days.''

The statute by which the foregoing provisions were enacted also contained the following express declaration of legislative policy. (Stats. 1935, p. 2285) : ''Sec. 2. It is declared that it is common knowledge that there are thousands of oil and gas wells, of varying age, within this State, which are not wholly within land owned, leased or otherwise controlled by the past or present owner or operator of the well; that many such wells were drilled without intent so to invade the land of another; that until recent years there was no way for determining even approximately the subsurface location of the well; that now it is difficult and expensive to determine by any method of subsurface directional survey even the approximate subsurface location of the well, and in cases of many producing wells, to make such survey may jeopardize the well and its ability to produce; that in many instances wells could not have been drilled and hereafter can not be drilled without some material deviation from the vertical; that the producing of most and perhaps all such wells has been and will be of great public benefit; that the possibility of commencement of large numbers of said causes of action, excepting where the acts hereafter are committed knowingly and intentionally as aforesaid, has brought great and undesirable confusion and uncertainty in the oil industry, may cause terrific financial distress and unemployment, and may

cause the premature abandonment and prevent the full use of many wells, all contrary to true conservation of oil and gas; that the people have a public interest in removing said hazard and precluding said confusion, uncertainty, distress and unemployment, without doing violence to private rights; that vigilant persons can protect their rights within said one hundred eighty days; that public policy and the welfare of the people require the reduction of the time for commencement of such causes of action and that said one hundred eighty days is deemed reasonable; that public policy and the welfare of the people require the measure of damages to be as above provided, in all cases where the invasion of the rights of another person has heretofore been or shall hereafter be by reason of any honest mistake of law or fact, either by the departure of a well from the vertical or otherwise.''

With respect to the purpose and meaning of section 349¾ it was stated in *Shell Oil Co.* v. *Richter*, 52 Cal.App.2d 164, 169 [125 P.2d 930]: "It provides a limit of 180 days, after the cause accrues, for filing an action for relief based upon the whipstocking of an oil well whether the relief asked be in the nature of abatement or compensation for oil removed. It is then provided that notwithstanding the continuing character of 'any such act,' which means the existing trespass and includes both the presence of the well and the removing of oil by means thereof, there shall be but one cause of action for 'such act.' That means that there shall be but one suit for the cause of action then existing and arising from 'such act' of trespass, including the original unlawful entry and the continuing presence of the well and removal of oil. It is then provided that this one cause of action, for such act of continuing trespass, shall be deemed to accrue 10 days after the well is first placed on production. This can only mean 10 days after the well is placed on production in such a manner as to give rise to a cause of action on account of the removal of oil as this is specifically made a part of the continuing trespass, the relief of which is limited to the one action. All of this relates to the continuing trespass, including the removal of oil, which gives rise to that cause of action which then exists and which accrues 10 days after first production.''

Since it affirmatively appears from the instant complaint that the subject well was producing at all times after June 1, 1944, and since there is no allegation that either the drilling of the well or the removal of oil ''was knowingly

committed with actual intent to commit such act,'' any cause of action therein stated necessarily accrued no later than 10 days after June 1, 1944, and was barred no later than December 10, 1944, or more than 13 years before the instant action was commenced. Indeed, as we have noted, it appears from one of plaintiff's earlier pleadings that the subject well was in production as early as 1931. By the terms of the statute, any cause of action arising from any trespass committed in its drilling or any cause of action for the removal of oil or gas by means of it was necessarily barred 180 days after September 15, 1935, the effective date of the statute— more than eight years before defendant leased the adjacent property in which plaintiff claims an interest and more than 21 years before plaintiff acquired such interest. Obviously an allegation that defendant entered into an oil and gas lease with plaintiff's predecessors in interest long after any cause of action was barred could afford no basis for a contention that the statute was tolled. (See *A. E. Bell Corp.* v. *Bell View Oil Syndicate,* 24 Cal.App.2d 587, 610-611 [76 P.2d 167].)

Having in mind the clearly expressed purpose of the statute to bar any and all causes of action either for trespass or for removal of oil by wells deviating from the vertical 180 days after their accrual (absent intentional commission of the acts complained of), plaintiff here can find no escape from its foreclosure. (*Shell Oil Co.* v. *Richter, supra,* 52 Cal.App.2d 164, 169; *Victory Oil Co.* v. *Hancock Oil Co.,* 125 Cal.App.2d 222, 234-235 [270 P.2d 604]; *Pacific Western Oil Co.* v. *Bern Oil Co.,* 13 Cal.2d 60, 72-73 [87 P.2d 1045].)

And since the right to slant drill into the leased property was not granted to defendant by the terms of the lease upon which plaintiff relies, the alleged slant drilling of the subject well from a surface location on other land necessarily constituted a trespass. As stated in 36 California Jurisprudence 2d 639, section 26: ''Where a lessee is given the exclusive right under a lease to enter on and extract oil from a definite area of land, any other drilling or extraction of oil from the leased premises is a trespass.'' And in *Julian* v. *Schwartz,* 16 Cal.App.2d 310, 330 [60 P.2d 887]: ''A lessee, given the exclusive right by an oil lease to enter upon and extract oil from a definite area of land, whether by means of one or more oil wells to be drilled under the lease, has and may enforce this right, and any other drilling or extraction of oil from the leased premises is a trespass.'' (See also 36 Cal.

Jur.2d 658, § 53; Civ. Code, § 1930; *Lineberger* v. *Delaney Petroleum Corp.,* 8 Cal.App.2d 153, 156 [47 P.2d 326].)

But regardless of whether or not the drilling of the subject well constituted a trespass, it is an obvious and inescapable fact that the purpose of the instant action is to recover money for the removal of oil and gas by means of a well whose surface location is on land other than that in which plaintiff claims an interest. Regardless of the theory invoked, the bar of the statute is clear. ██ Whenever it appears upon the face of a complaint that any possible cause of action therein alleged is necessarily barred by the statute of limitations, the defense is properly interposed by way of a general demurrer. (*California Safe Deposit & Trust Co.* v. *Sierra Valley R. Co.,* 158 Cal. 690, 697-698 [112 P. 274, Ann.Cas. 1912A 729]; *Stafford* v. *Russell,* 117 Cal.App.2d 319, 321 [255 P.2d 872].)

Plaintiff does not question the correctness of the recital in the instant judgment that "plaintiff . . . in answer to direct question by the court stated and represented unequivocably [sic] that he did not have and did not know of and could not allege any facts other than or further than or in addition to the facts already alleged by plaintiff . . ."

Accordingly, it must be held that the trial court did not err in sustaining the demurrer without leave to amend.

The judgment is affirmed.

Fox, P. J., and Ashburn, J., concurred.

A petition for a rehearing was denied September 18, 1959, and appellant's petition for a hearing by the Supreme Court was denied October 20, 1959.