[Civ. No. 10002.   Third Dist.   Mar. 24, 1961.]

HOWARD G. PUCKETT et al., Respondents, v. CARL SULLIVAN et al., Defendants; ARTHUR B. SIRI, INC. (a Corporation), Appellant.

Wallace, Garrison, Norton & Ray for Appellant.

Edward Dermott and L. G. Hitchcock for Respondents.

SCHOTTKY, J.—Albert B. Siri, Inc., alone has appealed from an adverse judgment in an action brought by Howard G. Puckett and his wife, Arline R. Puckett, for damages to their property resulting from landslides allegedly caused by the removal of lateral support by the excavation of dirt from

property owned by Carl Sullivan. Judgment also was entered against Sullivan, Peter Onsrud and James H. Capels who were held jointly and severally liable with Arthur B. Siri, Inc.

In 1947 defendant Sullivan purchased a substantial acreage in the northwest corner of Santa Rosa. The property consisted of a hillside area running to the east of Mendocino Avenue and south of a road referred to as DeVera Way. Subsequently, Sullivan subdivided the property and a number of homes were erected. The Pucketts purchased their property in September 1948, and proceeded to build a home thereon, and in 1950, 1951 and 1952 added a carport and other improvements.

It was Sullivan's intention ultimately to develop a shopping center in part of the area. To do this he started an excavation, beginning about 1950, from the south side of DeVera Way at its juncture with Mendocino Avenue to the south. The property of the Pucketts is separated from the excavations in question by DeVera Way and the property of one Twitchell, which lies southwest of the property of plaintiffs. Excavations were made immediately adjacent to the Twitchell property and to the southwest and downhill from plaintiffs' property. Defendants, Arthur B. Siri, Inc., Peter Onsrud and James H. Capels, bought soil from defendant Sullivan and excavated and removed the soil with defendant Sullivan's permission and under his direction. These excavations started in 1948-1949, and the evidence shows that each of the defendants above named from time to time excavated and removed the soil immediately to the south and to the west of the Twitchell property. Each of the defendants performed a substantial portion of the excavating. Each made his own agreement with Sullivan, and there was no relationship between the various parties who removed soil and earth. Puckett estimated a total of 150,000 to 200,000 cubic yards of earth were removed from the property, including the road.

As early as 1948 slides occurred in the area where a road had been constructed. In the fall of 1954 water lines in the area began to break. In the spring of 1955 cleavages appeared across DeVera Way and power poles commenced moving downward. Arthur B. Siri, Inc., commenced removing earth in 1954. It is clear that it removed earth from the cut in 1955. During the winter of 1955-1956 the rainfall was unusually heavy and all of the lands became saturated.

The hill in question was highly porous and soluble. It

was composed of volcanic tuff and ash under which was an impervious stratum of clay. It was susceptible to slides if disturbed. Plaintiffs' expert, Mr. Arendt, described the formation as a saucer tilted from east to west. He testified that the removal of the toe of the slope changed the drainage, removed the protective cover for the surface, changed the balance of the weights between Mendocino Avenue and the ridge of the hill, and permitted saturation in the formations underlying the hillside. The result was that the greater weight of the slopes moving downward started the movement on the slip plane toward Mendocino Avenue. If the toe of the hillside had not been removed, it would have remained in a stable condition for many years.

Defendants' expert, Mr. Moore, disagreed with the conclusion of Arendt. He stated the movement of the Puckett home occurred without relationship to the area of excavation and independent of it.

In the instant case no soil tests were made, no notice of the excavations were given, and a cut running from a depth of zero at the toe of the hill to a considerable depth where the landslides began was made. As stated, Siri, Inc., participated in these excavations. According to the testimony it used a clamshell tractor to remove the dirt from the cut, and according to the testimony the use of heavy trucks caused vibrations to be felt in surrounding houses.

The trial court found in part as follows:

"The excavations so conducted by defendants, and each of them, as herein set forth, withdrew the natural, necessary support of plaintiffs' property in its natural state and said excavations of defendants, and each of them, caused plaintiffs' property to subside and move downward. Said sloughing, sliding and subsidence commenced in the year 1955 and 1956, during the winter thereof, and substantially damaged and almost completely destroyed the residence and land of plaintiffs. The subsidence and movement of plaintiffs' property occurred as a direct and proximate result of acts of defendants, and each of them, as herein set forth, and the weight of the structures upon plaintiffs' land had no effect upon the subsidence, and such subsidence would have occurred even if the structures were not present thereupon. The taking of the soil by defendants, thus removing the support naturally necessary was the substantial and proximate cause of the subsidence, without which it would not have occurred.

"No reasonable, or any notice, to plaintiffs was given by

defendants, or any of them, of their intention to make said excavations at any time.

"The removal of the topsoil, earth and soil materials providing the lateral support of plaintiffs' property was done by each of the defendants in such a negligent and careless manner as to cause plaintiffs' property to subside, move and slough away as described herein. Such acts of each of said defendants concurred in proximately causing the subsidence, movement and sloughing away of plaintiffs' property and the resulting damage thereon."

These findings find ample support in the record.

Judgment was entered awarding plaintiffs damages in the sum of $11,000, and this appeal by defendant Arthur B. Siri, Inc., followed.

Appellant states the issues involved upon this appeal as follows: "The problems of this lawsuit basically boil down to two questions. The first question is simply whether, assuming that the removal of the earth from the cut south of DeVera Way and east of Mendocino Avenue affected the weight distribution of the area, did it constitute a removal of lateral support for which the defendants would have a liability. The second question involves the joint liability of the several individuals who from time to time independently moved more or less earth from the excavation for the damages, if any, which resulted therefrom."

The general rule of the right to lateral support is stated in Restatement of the Law, Torts, section 817, as follows:

"[A] person who withdraws the naturally necessary lateral support of land in another's possession, or support which has been substituted for the naturally necessary support, is liable for a subsidence of such land of the other as was naturally dependent upon the support withdrawn, in the absence of a superseding cause or other reason for relieving him. . . .

"*Naturally necessary lateral support*. Naturally necessary lateral support is that support which the supported land itself requires and which in its natural condition and in the natural condition of the surrounding land it would require. It does not include the support needed because of the presence of artificial additions to or other artificial alterations in the supported land or the surrounding land. The measure of this right of the other and of this duty of the actor is the natural dependence of land upon land, and the right and

duty are not enlarged by alterations of the natural condition. Lateral support made necessary by such alterations is not naturally necessary support. . . .''

In 2 Corpus Juris Secundum, Adjoining Landowners, section 7, it is stated:

''The right to lateral support is not confined to adjoining lands but extends to property separated by intervening parcels owned by other persons. Liability for negligence in the removal of lateral support includes any injury to buildings or other structures within the zone of support.''

Section 832 of the Civil Code provides:

'' [Lateral and subadjacent support.]

''Each coterminous owner is entitled to the lateral and subjacent support which his land receives from the adjoining land, subject to the right of the owner of the adjoining land to make proper and usual excavations on the same for purposes of construction or improvement, under the following conditions: . . .'' (Among the conditions enumerated are (1) that reasonable notice be given to the owners of adjoining lands, and (2) that the excavator shall use ordinary care and skill and take reasonable precaution to sustain the adjoining land.)

█ In the case of *Wharam* v. *Investment Underwriters,* 58 Cal.App.2d 346 [136 P.2d 363], a case which involved said section 832, the court said at page 349:

''At common law every owner of land was entitled to lateral support of that land from every other coterminous owner. This was an absolute right incident to the land itself. The coterminous owner who excavated upon his property, by the exercise of proper care and the application of proper means of support, was compelled to protect adjoining property in its natural state from sliding into the excavation. (*Aston* v. *Nolan,* 63 Cal. 269; *Sargent* v. *Jaegling,* 83 Cal. App. 485 [256 P. 1116]; *Sullivan* v. *Zeiner,* 98 Cal. 346 [33 P. 209, 20 L.R.A. 730]; *Charles F. Harper Co.* v. *DeWitt M. & R. Co.,* 115 Cal.App. 15 [300 P. 839].)

█ ''With the growth of urban communities, and changing conditions, it was early perceived in California that there should be some relaxation of the common law rule.

''This relaxation was codified by the enactment of our Legislature of Civil Code section 832 in 1872 and several amendments thereto during the passing years. There is nothing in section 832 *supra* which permits or excuses negligent trespass upon adjoining property. All that said section

does is to permit a land owner to excavate, freed from the absolute common law right of lateral support in his neighbor, provided certain conditions in the code section are complied with, and always provided that negligence of the excavator is not the proximate cause of damage to the property of the adjoining land owner. For no man may use his own property so negligently as to cause damage to or destruction of his neighbor's property. (See § 832, Civ. Code; *Pacific Gas & Electric Co.* v. *Scott*, 10 Cal.2d 581 [75 P.2d 1054], and cases cited at page 585.)''

In the instant case there was land intervening between the area of the cut and respondents' property, and therefore respondents were not coterminous owners. However, section 832 *supra* did not change or enlarge the common-law rule as to the right to lateral support (*Sargent* v. *Jaegling*, 83 Cal.App. 485 [256 P. 1116]), and the fact that respondents' land did not have a common boundary with the area of the excavation would not deprive respondents of the right to recover for damage caused to their property by any negligence of appellant which caused the damage. Hence we believe that liability for damages to a noncontiguous tract must rest upon negligence. (*Lugin* v. *Dobson*, 376 Pa. 620 [104 A.2d 95].)

As hereinbefore set forth, the court found that the excavating was done by each of the defendants in such a negligent and careless manner as to cause the subsidence of respondents' property, and this finding, if supported by the evidence, is sufficient to support the judgment. We believe that the evidence is sufficient to support the finding of the trial court as to the negligence of appellant. We believe that the trial court could reasonably infer from the evidence that it was negligence on the part of defendants to make a cut running from zero at the toe of the hill to a considerable depth where the landslides began without ascertaining whether the cut would cause damage to the land of neighboring landowners. These were questions of fact to be decided by the trial court, and we cannot hold that the findings of the trial court as to negligence are without substantial support in the record.

Appellant contends also that there is no basis for holding jointly liable several individuals who acted independently in making the excavations and removing the earth. Appellant argues that the damages, if any, should be apportioned among the defendants. We do not agree.

In *Finnegan* v. *Royal Realty Co.*, 35 Cal.2d 409, the court said at page 433 [218 P.2d 17]:

"Where several persons act in concert and damages result from their joint tort, each person is held for the entire damages unless segregation as to causation can be established. Even though persons are not acting in concert, if the result produced by their acts are indivisible, each person is held liable for the whole. Death, burning of a building or the sinking of a boat are such indivisible results. The reason for imposing liability on each for the entire consequence is that there exists no basis for dividing damages and the law is loath to permit an innocent plaintiff to suffer as against a wrongdoing defendant. This liability is imposed where each cause is sufficient in itself as well as where each cause is required to produce the result. (15 So.Cal.L.Rev. 439.)"

In the instant case the trial court found that the "acts of each of said defendants concurred in proximately causing the subsidence, movement and sloughing away of plaintiffs' property and the resulting damage thereto" and gave judgment against all of the defendants. The record supports this finding. Appellant, Arthur B. Siri, Inc., cannot escape liability because others independently removed earth. No one can say with certainty when the unbalance was created by the removal of the earth. Each person contributed to the result. Appellant removed a substantial quantity of earth. Clearly the trier of fact could find that appellant's conduct was a substantial factor contributing to the result. As stated in Prosser on Torts: "The defendant's conduct is a cause of the event if it was a material element and a substantial factor in bringing it about. Whether it was such a substantial factor is for the jury to determine, unless the issue is so clear that reasonable men could not differ." (P. 221.) "Where two or more causes combine to produce such a single result, incapable of any logical division, each may be a substantial factor in bringing about the loss, and if so, each may be charged with all of it." (P. 226.) (See also *Finnegan* v. *Royal Realty Co.*, *supra*.) Here there was a single result incapable of logical division.

Nothing else requires discussion.

The judgment is affirmed.

Van Dyke, P. J., and Peek, J., concurred.

A petition for a rehearing was denied April 21, 1961, and appellant's petition for a hearing by the Supreme Court was denied May 16, 1961.