[No. B075769. Second Dist., Div. Three. Oct. 6, 1994.]

TRAVELERS INDEMNITY COMPANY OF ILLINOIS, Plaintiff and Appellant, v.
CITY OF REDONDO BEACH et al., Defendants and Respondents.

1434

## COUNSEL

Breidenbach, Swainston, Crispo & Way, Thomas A. Kearney, Richard E. Rico, Paul A. Alvarez and Ted H. Luymes for Plaintiff and Appellant.

Dewey Ballantine, David S. McLeod, Jeffrey R. Witham, John P. Flynn, Patrick S. Schoenburg, Walters, McCluskey & Boehle, Michael T. Montgomery, Flynn, Delich & Wise, Erich P. Wise, Nicholas Polites, Hanna & Morton, Bela G. Lugosi, Burkley, Greenberg & Fields, Dana K. Anderson, Carlsmith, Ball, Wickman, Murray, Case, Mukai & Ichiki and Clark Heggeness for Defendants and Respondents.

## OPINION

**CROSKEY, J.**—The Travelers Indemnity Company of Illinois (Travelers) appeals from an order dismissing its first amended complaint after the demurrer of the respondents[1] was sustained without leave to amend.

The pivotal issue in this case relates to the application of the 180-day limitations period set out in Code of Civil Procedure section 349¾. We

---

[1] Respondents are a number of oil companies which were named as defendants in Travelers' subrogation complaint. Except for two of the companies, which have been dismissed from the action by Travelers, those same defendants are the respondents appearing in this appeal. They are UMC Petroleum Corporation; Maxxam, Inc., formerly known as MCO Holdings, Inc.; Texaco Exploration & Production, Inc.; Getty Oil Company; Reserve Oil & Gas Company

conclude that this special legislation, enacted for expressly stated reasons of public policy to limit the period in which an action can be brought for an "underground trespass, use or occupancy [caused] by means of a well drilled for oil or gas . . . ," does not apply. We cannot broadly read this statute, as respondents would have us do, to impose on nearly every claim arising from an oil drilling operation a six-month limitation period. We therefore reverse the order of dismissal except for the trespass cause of action, which is plainly covered by section 349¾, and one other count, which is defective for a separate and independent reason. As to those two counts we affirm the order.

### FACTUAL AND PROCEDURAL BACKGROUND[2]

On January 17, 1988, a powerful winter storm caused ocean waves to overtop the breakwater in Redondo Beach Harbor. This resulted in substantial damage to the Portofino Inn with an attendant loss to its owners in excess of $10 million. Travelers, the inn's property insurer, paid this loss and became subrogated to the inn's rights against any third parties who may have had some legal responsibility for the damage.

In pursuit of its subrogation claim, Travelers, on January 31, 1989, filed suit against the City of Redondo Beach (City) and a number of Doe defendants alleging that the breakwater had not been constructed high enough to restrain the storm waves. Travelers sought recovery on causes of action for (1) dangerous condition of public property (Gov. Code, § 835), (2) inverse condemnation, (3) breach of lease and (4) negligence (Gov. Code, § 815.2). It is not disputed that, at the time this complaint was filed, Travelers was unaware that respondents' actions and conduct might have contributed to the loss suffered by its insured.

In February 1991, during discovery which it was monitoring in a related case, Travelers learned for the first time that an expert, identified in such related case,[3] was prepared to testify that the breakwater had subsided approximately two feet after its original construction due to the oil drilling

doing business as Getty Oil Company; Texaco Reserve, Inc.; Triton Oil & Gas Co.; Worldwide Pacific Corporation; Kelt Oil & Gas, Inc.; Kelt California, Inc.; and FPCO Oil & Gas Company, a dissolved corporation, served as FPCO Oil & Gas Company, a Colorado corporation.

[2]Given the procedural posture in which this case comes before us, we accept as true the allegations of fact made by Travelers.

[3]National Union Fire Insurance Company, as subrogee of Reuben's Restaurant (another victim of the January 17, 1988, storm), filed an action in state court against the City of Redondo Beach (National Union Fire Ins. Co. v. City of Redondo Beach (Super. Ct. L. A. County, No. WEC 139017)). National Union also filed a separate action against the United States of America (U.S. Army Corps of Engineers) (National Union Fire Ins. Co. v. United

activities beneath Redondo Beach Harbor conducted by a number of oil companies pursuant to contracts and lease agreements with the City. Further investigation by Travelers developed information demonstrating that the respondents had, prior to January 17, 1988, been engaged in drilling operations and oil extraction activities from beneath an area of Redondo Beach Harbor which included the breakwater.

Based on this information, Travelers filed a motion on January 8, 1992, in which they sought leave to amend the original complaint to add the respondent oil companies as defendants and to allege six additional theories of recovery: (1) negligence, (2) trespass, (3) absolute liability for interference with lateral and subjacent support, (4) strict liability for ultrahazardous activity, (5) violation of Harbors and Navigation Code section 294, and (6) nuisance. Travelers argued in support of its motion that its recent discovery of this new information, and the fact that the claims would "relate back" to the original filing date, would justify the filing of the amendment. The trial court agreed, the motion was granted and the first amended complaint was filed on January 28, 1992.

Respondents demurred to this pleading, contending that the 180-day statute of limitations of Code of Civil Procedure section 349¾[4] barred the four causes of action for trespass, interference with lateral and subjacent support, ultrahazardous activity and the violation of Harbors and Navigation Code section 294. On May 15, 1992, the trial court sustained respondents' demurrers to each of these causes of action without leave to amend. That left the two remaining counts for negligence and nuisance. On June 10, 1992, the

---

States (U.S. Dist. Ct (C.D.Cal.), 1988, No. CV-88-6962 MRP (Gx)). It was during discovery in this latter proceeding that the United States Attorney identified the expert witness described above.

[4]Unless otherwise indicated, all statutory references are to the Code of Civil Procedure.

As relevant to this matter, section 349¾, which was enacted in 1935, provides: "[The periods prescribed for the commencement of actions other than for the recovery of real property, are as follows: (§ 335.)] [¶] Within one hundred eighty days: [¶] (a) An action to enjoin, abate, or for damages on account of, an underground trespass, use or occupancy, by means of a well drilled for oil or gas or both from a surface location on land other than real property in which the aggrieved party has some right, title or interest or in respect to which the aggrieved party has some right, title or interest. [¶] . . . . [¶] When any of said acts is by means of a new well the actual drilling of which is commenced after this section becomes effective, and such act was knowingly committed with actual intent to commit such act, the cause of action in such case shall not be deemed to have accrued until the discovery, by the aggrieved party, of the act or acts complained of; but in all other cases, and as to wells heretofore or hereafter drilled, the cause of action shall be deemed to have accrued ten days after the time when the well which is the subject of the cause of action was first placed on production. [¶] Notwithstanding the continuing character of any such act, there shall be but one cause of action for any such act, and the cause of action shall accrue as aforesaid."

respondents filed a demurrer to these counts as well, relying again on section 349¾.

On October 23, 1992, the trial court overruled this demurrer, holding that section 349¾ did not apply.[5] The respondents immediately requested reconsideration arguing that since the trial court in the state court National Union case (see fn. 3, *ante*) had *sustained* this very same demurrer, the ruling in this case was inconsistent and should be changed. Apparently giving little consideration to the possibility that its original ruling was correct (see fn. 5, *ante*), and that of the judge in the National Union matter was wrong, the trial court granted the respondents' reconsideration motion and, upon reconsideration, reversed its earlier ruling and sustained the demurrer to the negligence and nuisance counts without leave to amend. On April 1, 1993, the court filed its order dismissing the action as to the respondents. This timely appeal followed.

## CONTENTS

This appeal is essentially about the timeliness of Travelers' complaint. The central issue presented is whether section 349¾ applies to all of Travelers' causes of action. If it does, then the trial court was correct and its order of dismissal must be affirmed. On the other hand, if section 349¾ does not apply, then Travelers' pleading was filed in a timely manner and we must reverse.

Travelers contends that section 349¾ simply has no application to this case. Indeed, Travelers argues, the fundamental thrust of the relevant portion of that statute was directed at actions for unintentional *underground* trespass

---

[5]Specifically, the court stated: "The demurrer of moving parties to the Fifth and Tenth Causes of Action (negligence and nuisance) is over-ruled. [Travelers'] argument regarding the applicability of the statute of limitations is compelling. Code of Civil Procedure § 349¾, both by its clear language and the interpretation given it by the courts, appears to limit only those actions entailing claims for damages which occurred as a result of an oil company's trespass under land owned by the plaintiff. The causes of action demurred to are directed at the alleged subsidence of the King Harbor breakwater and not of the Portofino Inn. Therefore, section 349¾ does not apply. The reliance of the demurring parties on *Felburg* v. *Don Wilson Builders* [(1983) 142 Cal.App.3d 383 (191 Cal.Rptr. 92)] is misplaced. That case involved damage to a home caused by the presence of an abandoned oil sump beneath plaintiffs' house, not on some other property in which plaintiffs had no interest. [ ] [¶] It further appears that the addition of the oil company defendants properly relates back to the filing of the original Complaint. The negligence and nuisance causes of action clearly relate to the same general set of facts and the same injury. The request of the demurring parties that the Court apply the rule of *Miller* v. [*Parker*] [(1933) 128 Cal.App. 775 (18 P.2d 89)] is inappropriate, because the plaintiff in that action neglected to join a defendant of whose identity she was aware at the time the action was originally filed."

caused by "slant" or "whipstocking" drilling activities of an oil driller which succeeded in pumping oil from the property of another. Such a factual scenario has nothing to do with this case. Therefore, respondents' demurrer based on this limitations statute should have been overruled as to all of Travelers' causes of action.

The respondents dispute that argument and contend that section 349¾ is to be more broadly applied and does bar all of Travelers' causes of action against them since the statutory limitation period had expired prior to the time when Travelers filed its original complaint. Therefore, they urge, Travelers' argument in regard to the application of the "relation back" doctrine is irrelevant.[6] They also contend that the limitations period of section 349¾ aside, there are independent reasons why the trial court's ruling was correct with respect to the counts for (1) interference with lateral and subjacent support, (2) liability for ultrahazardous activity and (3) violation of Harbors and Navigation Code section 294.

DISCUSSION

1. *Standard of Review*

This is an appeal from a judgment of dismissal entered after demurrers were sustained to plaintiff's first amended complaint. "Therefore, under settled law, we assume the truth of all properly pleaded material allegations of the complaint [citations] and give it a reasonable interpretation by reading it as a whole and its parts in their context. [Citation.]" (*Phillips* v. *Desert Hospital Dist.* (1989) 49 Cal.3d 699, 702 [263 Cal.Rptr. 119, 780 P.2d 349].) If the demurrer was sustained, as it was in this case, our function is to determine whether the complaint states sufficient facts to state a cause of action. (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

2. *Section 349¾ Was Enacted to Place a Limitation on the Prosecution of Actions for Unintentional Underground Trespass by Oil Drilling Operations*

As we have noted, the parties dispute the application of section 349¾ to this case. Respondents argue that the statute applies "broadly to actions for damages occasioned by wells drilled for oil and gas." Travelers

---

[6] Respondents thus do not dispute that Travelers' subsequently filed causes of action against them would "relate back" to the original filing date provided that the original complaint was filed in a timely manner.

insists that the statute has a far more limited purpose. Relying on the language of the statute itself, Travelers urges that it is limited to "causes of action for underground trespass, use or occupancy of the plaintiff's property."

The Legislature enacted section 349¾ in 1935 to lessen the burden on oil drillers who had inadvertently trespassed on the property of another through the process of slant-drilling or whipstocking. The techniques of such drilling activities were little understood in the 1920's and early 1930's. (Krueger, *State Tidelands Leasing in California* (1958) 5 UCLA L.Rev. 427, 436-437.) As one court pointed out, within a few years after 1930 "techniques for ascertaining and controlling a hole were developed, survey methods first, directional drilling methods later. No doubt thousands of inadvertent trespasses were revealed. . . ." (*Victory Oil Co.* v. *Hancock Oil Co.* (1954) 125 Cal.App.2d 222, 234 [270 P.2d 604].)

The enactment of section 349¾ was the legislative response. In adopting that statute, the Legislature found it necessary to declare the relevant public policy at some length: "Sec. 2. *Declaration of policy.* It is declared that it is common knowledge that there are thousands of oil and gas wells, of varying age, within this state, which are not wholly within land owned, leased or otherwise controlled by the past or present owner or operator of the well; that many such wells were drilled *without intent* so to invade the land of another; that until recent years there was no way for determining even approximately the subsurface location of the well; that now it is difficult and expensive to determine by any method of subsurface directional survey even the approximate subsurface location of the well, and in cases of many producing wells, to make such survey may jeopardize the well and its ability to produce; that in many instances wells could not have been drilled and hereafter can not be drilled without some material deviation from the vertical; that the producing of most and perhaps all such wells has been and will be of great public benefit; that the possibility of commencement of large numbers of said causes of action, *excepting where the acts hereafter are committed knowingly and intentionally* as aforesaid, has brought great and undesirable confusion and uncertainty in the oil industry, may cause terrific financial distress and unemployment, and may cause the premature abandonment and prevent the full use of many wells, all contrary to true conservation of oil and gas; that the people have a public interest in removing said hazard and precluding said confusion, uncertainty, distress and unemployment, without doing violence to private rights; that vigilant persons can protect their rights within said one hundred eighty days; that public policy and the welfare of the people require the reduction of the time for commencement of

such causes of action and that said one hundred eighty days is deemed reasonable; that public policy and the welfare of the people require the measure of damages to be as above provided, in all cases where the invasion of the rights of another person has heretofore been or shall hereafter be by reason of any honest mistake of law or fact, either by the departure of a well from the vertical or otherwise." (Stats. 1935, ch. 852, pp. 2286-2287, italics added.)

We have found no statute of limitations case, and the parties have cited us to none, in which a court applied section 349¾ and which did not involve an underground invasion of or trespass on the plaintiff's property. (See, e.g., *Pacific Western Oil Co.* v. *Bern Oil Co.* (1939) 13 Cal.2d 60 [87 P.2d 1045]; *Stafford* v. *Union Oil Co.* (1959) 173 Cal.App.2d 307 [343 P.2d 380]; *Shell Oil Co.* v. *Richter* (1942) 52 Cal.App.2d 164 [125 P.2d 930]; *Union Oil Co.* v. *Domengeaux* (1939) 30 Cal.App.2d 266 [86 P.2d 127]; *A.E. Bell Corp.* v. *Bell View Oil Synd.* (1938) 24 Cal.App.2d 587 [76 P.2d 167]; *Williams* v. *Continental Oil Co.* (W.D.Okla. 1953) 14 F.R.D. 58.)

3. *Section 349¾ Applies Only to the Trespass Cause of Action.*

By its plain terms, section 349¾ applies to Travelers' trespass cause of action, in which it is alleged that the defendants' "subsurface entry onto land occupied by [the Portofino Inn] unlawfully interfered with the possession of [the Portofino Inn]," resulting in the damage which occurred. However, we reject the respondents' broad reading of section 349¾, which would apply the statute to all of Travelers' causes of action. Their argument that the only requirement for the application of the statute is that a plaintiff sustain some property damage as a result of the drilling of a well "from a surface location on land other than [the plaintiff's] real property" is way off the mark. It totally ignores the specific statutory language requiring an "underground trespass, use or occupancy" by a well drilled from a remote surface location. As the legislative history of this statute makes clear, and as the Legislature expressly stated, the purpose of the legislation was to quickly conclude claims for unintentional underground oil drilling trespass without undue loss or damage to the oil industry.[7] The statute does not have the remotest application to Travelers' nontrespassory causes of action.

Notwithstanding Travelers' attempt to plead a trespass cause of action, the facts which the remainder of the complaint sets forth do not constitute a

---

[7]It is not entirely clear what the Legislature meant by its reference to future drilling trespasses "knowingly committed with actual intent to commit such act." We assume without deciding that the phrase was meant to except from the special provisions of the statute those drilling operations conducted after the effective date of the statute where the drillers knew they were invading the property of another and intended to do so. However, we need not address that question here. We assume, arguendo, that any trespass resulting from respon-

"trespass, use or occupancy . . ." of its insured's land. To the contrary, the gravamen of Travelers' action against the respondents is that their oil drilling activity caused a subsidence, not on the property of Travelers' insured, but under the breakwater, resulting in a lowering of that bulwark by two feet. Travelers' insured had no right, title or interest in that breakwater. What Travelers claims is that respondents' actions created a dangerous condition in the breakwater, a piece of public property, which seriously compromised the breakwater's ability to serve its designed purpose of protecting the bay front property, one parcel of which was the Portofino Inn.

Respondents rely on language in *Felburg* v. *Don Wilson Builders* (1983) 142 Cal.App.3d 383 [191 Cal.Rptr. 92] to the effect that section 349¾ applies to any damage "occasioned by" the drilling of an oil well. (142 Cal.App.3d at p. 392.) That reliance is misplaced. In *Felburg*, the property acquired by the plaintiff (a residence developed on the surface of an old oil field) was damaged by an oil sump which resulted from prior drilling activities. (*Id.* at pp. 387-388.) These facts came within the terms of section 349¾ and the court properly granted summary judgment to the oil company defendant. (142 Cal.App.3d at p. 392.) However, it is not correct to read *Felburg* as applying section 349¾ to *all* causes of action based on damages occasioned by any nearby oil well drilling. *Felburg* said no such thing,[8] and certainly its unremarkable holding provides no support whatever for respondents' position.

While it is true, as respondents contend, that the trespass described in section 349¾ can result from a departure of a well from the "vertical *or otherwise*,"[9] that certainly cannot be read to embrace the factual scenario which occurred here. The ocean waves which crashed down on the Portofino Inn did not amount to an indirect trespass by respondents' drilling activity. Respondents' contention to that effect is simply an artfully creative way to

---

dents' drilling operations was not done knowingly and intentionally. Travelers does not contend otherwise.

[8] What *Felburg* did say was that section 349¾ "provides a statute of limitations of 180 days for a cause of action based on damages occasioned by 'a well drilled for oil . . . from a surface location on land other than [plaintiff's] real property . . . .' " This is a long way from bringing every possible cause of action which might arise from a well drilling operation within the ambit of the 180-day limitation period. Moreover, *Felburg* provided no analysis of section 349¾, nor did it examine its legislative history. In light of such omissions, no substantial significance should be given to the court's casual and imprecise shorthand phrase, "occasioned by . . . ," in lieu of the full statutory language.

[9] We tend to agree with Travelers' characterization of this quoted phrase, which is used in the uncodified Declaration of Policy enacted in connection with section 349¾. The departure of a well from the "vertical" clearly describes a "slant" drilling operation. The alternative term "or otherwise" could well refer to the other drilling technique often used to accomplish the same end. It is known as "whipstocking."

try and escape responsibility for their alleged misconduct under cover of section 349¾.

Because we conclude that section 349¾ applies only to Travelers' trespass cause of action, we hold that the trial court erroneously sustained respondents' demurrers to the other causes of action on this ground. The claims to which Travelers is subrogated arose on January 17, 1988, and this action was filed on January 31, 1989. This is well within any of the statute of limitations periods which might be applicable to the remaining causes of action. The first amended complaint, filed on January 22, 1992, substituted the oil company defendants for numerous "Does" and added applicable causes of action which manifestly arose from the same general set of facts. It therefore "related back" to the original complaint. (§ 474; *Barrington* v. *A.H. Robins Co.* (1985) 39 Cal.3d 146, 150-152 [216 Cal.Rptr. 405, 702 P.2d 563]; *Smeltzley* v. *Nicholson Mfg. Co.* (1977) 18 Cal.3d 932, 940 [136 Cal.Rptr. 269, 559 P.2d 624, 85 A.L.R.3d 121].)

4. *With One Exception, Respondents' Assertion on Appeal That Other Independent Grounds Exist for Affirming the Order of Dismissal Are Without Merit*

Although the trial court relied exclusively on section 349¾ in sustaining respondents' demurrers, respondents argue on appeal that independent grounds exist for affirming the dismissal of three of Travelers' six causes of action.

a. *Absolute Liability for Interference With Lateral and Subjacent Support*

It would appear that this common law action is limited to claims between *adjacent* landowners. (*Puckett* v. *Sullivan* (1961) 190 Cal.App.2d 489, 495 [12 Cal.Rptr. 55, 87 A.L.R.2d 704].) Only activity on or which impacts an *adjacent parcel* can result in absolute liability for the loss of lateral or subjacent support.[10] As Travelers has not, and apparently cannot, allege that the Portofino Inn was adjacent to either the breakwater or the parcel(s) on the surface of which respondents conducted their drilling activities, this count does not state a viable cause of action. As the trial court's

---

[10]We recognize that the court in *Puckett* v. *Sullivan, supra,* held that a property owner is not deprived of a cause of action against an owner of a noncontiguous parcel if such person *negligently* deprived the plaintiff's land of lateral support. However, any cause of action which Travelers has against the oil companies on this theory is subsumed within its already existing negligence cause of action; it would be redundant to restate it in a separate count for negligent interference with support.

decision was correct as to this count, albeit for the wrong reason, we will affirm the order of dismissal of this cause of action. (*Troche* v. *Daley* (1990) 217 Cal.App.3d 403, 407 [266 Cal.Rptr. 34].)

b. *Strict Liability for Ultrahazardous Activity*

■ The question presented by this argument of respondents is whether oil drilling is, as a matter of law, ultrahazardous so as to impose liability upon them. However, it would appear that this is a question which cannot properly be decided on demurrer. As one court put it: "Section 520, Restatement Second of Torts enumerates the factors to be considered in determining whether an activity is 'abnormally dangerous' or 'ultrahazardous': '(a) existence of a high degree of risk of some harm to the person, land or chattels of others; (b) likelihood that the harm that results from it will be great; (c) inability to eliminate the risk by the exercise of reasonable care; (d) extent to which the activity is not a matter of common usage; (e) inappropriateness of the activity to the place where it is carried on; and (f) extent to which its value to the community is outweighed by its dangerous attributes.' Whether a particular activity is abnormally dangerous is to be determined by the court 'upon consideration of all the factors listed in this Section, and the weight given to each that it merits upon the facts in evidence.' (Rest.2d Torts § 520, com. *l*.) Due to the interplay of the various factors, it is impossible to define abnormally dangerous activities. 'The essential question is whether the risk created is so unusual, either because of its magnitude or because of the circumstances surrounding it, as to justify the imposition of strict liability from the harm that results from it, even though it is carried on with all reasonable care. In other words, are its dangers and inappropriateness for the locality so great that, despite any usefulness it may have for the community, it should be required as a matter of law to pay for any harm it causes without the need of a finding of negligence.' (*Id*. at § 520, com. f.) Thus, by its very nature, the issue of whether an activity is ultrahazardous cannot be decided on demurrer." (*SKF Farms* v. *Superior Court* (1984) 153 Cal.App.3d 902, 906 [200 Cal.Rptr. 497]; see also, *Goodwin* v. *Reilley* (1985) 176 Cal.App.3d 86, 90-92 [221 Cal.Rptr. 374].)

Respondents ask us to decide the issue as a legal matter. We do not believe that would be appropriate at this early stage of these proceedings. Given the peculiar facts here involved, the location of the drilling activity and the importance of the breakwater to the safety of the Redondo Beach Harbor and its adjacent facilities, we cannot say, as a matter of law, that respondents' drilling was not ultrahazardous.

### c. *Violation of Harbors and Navigation Code Section 294*

■ This statute, as it was enacted in 1986, makes "any person" liable for damages "incurred by any injured party" which arise from "any exploration in or upon marine waters" from (1) "Any offshore well or undersea site at which there is exploration for or extraction or recovery of natural gas or oil . . . ."

Respondents argue that this statute is limited to damages from oil spills.[11] We disagree, at least for purposes of ruling on this demurrer. When the facts are developed in this matter, it may well be appropriate for the trial court to revisit the issue. As Travelers points out, the legislative history of this statutory provision suggests that respondents' reading of the statute may be too narrow. Among the express findings and declarations made by the Legislature in enacting Harbors and Navigation Code section 294 was the statement, "It is inevitable that there will be oil spills *and other accidents* as a result of undersea exploration, recovery, processing, production, and transportation of oil and natural gas . . . off the California Coast." (Stats. 1986, ch. 1498, § 1(c), p. 5372, italics added.)

### Disposition

The order of dismissal is reversed except as to the causes of action for trespass and absolute liability for interference with lateral and subjacent support. As to those counts, the order is affirmed. Costs on appeal are awarded to Travelers.

Klein, P. J., and Kitching, J., concurred.

---

[11]The case they cite for this proposition does not so hold. (See *Slaven* v. *BP America, Inc.* (C.D.Cal. 1992) 786 F.Supp. 853, 865.)