[No. B195552. Second Dist., Div. Eight. Oct. 9, 2008.]

STONEHOUSE HOMES LLC, Plaintiff and Appellant, v.
CITY OF SIERRA MADRE et al., Defendants and Respondents.

COUNSEL

Greenberg Glusker Fields Claman & Machtinger and Garrett L. Hanken for Plaintiff and Appellant.

Colantuono & Levin, Sandra J. Levin and Holly O. Whatley for Defendants and Respondents.

OPINION

**FLIER, J.**—Stonehouse Homes LLC (Stonehouse) appeals an order (judgment) of dismissal entered after the trial court sustained a demurrer to Stonehouse's complaint for declaratory relief with leave to amend, and Stonehouse declined to amend. Stonehouse seeks a declaration that resolution No. 06-024 (moratorium resolution) was enacted by respondents the City of Sierra Madre (City) and the Sierra Madre City Council (city council) in violation of Stonehouse's constitutional and statutory rights, and it is therefore facially invalid. Stonehouse contends its complaint adequately alleged an actual and present controversy with respondents, and there exists possible evidence to support declaratory relief in this case. We affirm, finding the case is not yet ripe.

## FACTS

Respondent City is located in the steep hillsides of the San Gabriel Mountains northeast of Pasadena. Stonehouse is a developer of real estate and the owner of about 103 acres of land on Stonehouse Road in Sierre Madre.

Part of Stonehouse's property lies within the Hillside Management Zone (HMZ). Stonehouse seeks to develop the southerly 25 acres of its property, a portion of which is located within the HMZ, and has in process vesting tentative tract map and conditional use permit applications through the City. The HMZ provisions impose specialized requirements for areas north of an established HMZ boundary line. HMZ provisions include a requirement for lot sizes under a formula based on the severity of the slope of the land.

On August 8, 2005, respondent city council adopted ordinance No. 1237 U (moratorium ordinance) as an urgency measure and later extended the ordinance on September 15, 2005. The moratorium ordinance covers an area that includes the entirety of Stonehouse's property and essentially requires property developers of land falling within the moratorium area to comply with HMZ provisions.

Implementing the moratorium ordinance, on November 22, 2005, the city council adopted resolution No. 05-086 (advisory committee resolution), which appointed an HMZ ad hoc committee (HMZ advisory committee) to study and provide preliminary input regarding potential revisions to the HMZ provisions, focusing on 11 areas of concern. Among other things, the resolution asked the HMZ advisory committee to consider a recommendation that lot sizes in the HMZ area be increased, noting "[l]imits as high as 1 house per acre might be entirely appropriate." The resolution set a schedule for the HMZ revision process. The HMZ advisory committee was directed to hold twice-monthly public sessions starting in January 2006, to issue its recommendations in June 2006, and to present final recommendations to the planning commission in November 2006. An "Environmental Impact Report" was to be initiated in December 2006, leading to review of any proposed revisions to the HMZ by the city council in July 2007.

Subsequently, on January 19, 2006, Stonehouse submitted two applications to the City for single-family residential development of Stonehouse's property: (1) a vesting tentative tract map proposed to subdivide and develop about 25 acres of the southerly portion of the property into single-family residential lots, with the remaining portion of the property to be deed restricted to relinquish development rights, and (2) an application for a conditional use permit sought approval for development under HMZ provisions. Although most of the 25 acres proposed for development were located within a different zone, the applications treated the entire property as if it fell within the HMZ. Stonehouse prepared and submitted numerous technical reports required under the HMZ provisions.

On February 15, 2006, Stonehouse received a letter from the City stating its applications were not complete. The letter listed 16 items that Stonehouse needed to address, including a prefiling meeting. About the time of this meeting, which took place on March 28, 2006, the City allegedly "clarified and narrowed" the requirements of the incomplete items, and it also allegedly agreed to "check off" immediately the incomplete items as Stonehouse submitted additional materials despite a statutory 30-day waiting period. Stonehouse purported to complete the incomplete items on April 17, 2006, and it confirmed the revised requirements by a letter dated April 18, 2006.

In the interim, on April 6, 2006, the City had published a notice in the local newspaper to initiate the preparation of an ordinance to amend the HMZ provisions. The notice stated the city council was considering a moratorium resolution directing the planning commission, in conjunction with the HMZ advisory committee and city staff, "to prepare an ordinance amending the zoning ordinance regarding minimum lot size and lot dimensions for new subdivisions in the [HMZ]." (Capitalization omitted.) The published notice

specified the contents of the ordinance to be prepared, such as density reduction standards. The published notice further stated, "The proposed ordinance will be brought back to the City Council along with the necessary environmental documentation pursuant to CEQA [California Environmental Quality Act (see Pub. Resources Code, § 21000 et seq.)] for review at a future date."

On April 18, 2006, the city council held a hearing on the moratorium resolution, which passed on a vote of three to two.

On May 17, 2006, 30 days after Stonehouse submitted its additional materials, the City notified Stonehouse the additional materials were insufficient. In the notice of incompleteness, the City purported to require items that were in addition to or inconsistent with the clarifications and modifications agreed upon during the prefiling meeting. Stonehouse's appeal to the city planning commission was denied.

Stonehouse filed the present action for declaratory relief on July 17, 2006. At the time Stonehouse filed its complaint, it was in the process of appealing the planning commission decision to the city council.

The complaint alleged an actual and present controversy existed between Stonehouse and respondents "concerning the legal rights and duties of the parties as they relate to the validity of [the moratorium resolution] and its effect upon the ordinances, policies, and standards that may lawfully be applied to [Stonehouse's] [a]pplications." Stonehouse contended the moratorium resolution was enacted in violation of its constitutional and statutory rights of substantive and procedural due process of law, and its right to equal protection of the laws, and it is therefore invalid on its face. The resolution, Stonehouse further alleged, is "arbitrary, capricious, entirely lacking in evidentiary support, unlawfully and procedurally unfair, unfairly singles out Stonehouse . . . to bear the burden of governmental action, and unfairly seeks to punish Stonehouse . . . for other development activity in the City." The complaint in addition claimed that the moratorium resolution "unduly constrains residential development and therefore violates California housing laws."

## PROCEDURAL HISTORY

Respondents filed a general demurrer to the complaint. Among other things, respondents argued the complaint sought to have the court rule on the validity of a resolution that "enacts no legislation, imposes no obligation on Stonehouse or anyone else, but rather contains only notice of *potential* changes to the City's zoning regulations to be considered some time in the

future." Among other things, respondents argued the City has not amended any zoning regulations referenced in the resolution, and it could do so only after noticed hearings before both the planning commission and the city council, at which hearings Stonehouse would have the right to be heard.

In essence, respondents asserted, Stonehouse was seeking an advisory ruling because it was plain from the allegations of the complaint that the City had taken no action actually affecting Stonehouse beyond the mere fact of giving notice to the public of legislation it might pursue in the future.

The trial court sustained respondents' demurrer with leave to amend.[1]

The court ruled the complaint did not state facts sufficient to constitute a cause of action. The court reasoned Stonehouse was contending the City was attempting to deprive Stonehouse of a safe harbor provision of the Subdivision Map Act (Gov. Code, § 66474.2, subd. (a)).[2] The complaint alleged the City proposed to employ the procedure set forth in section

---

[1] The court granted respondents' request to take judicial notice of the moratorium resolution at issue. (Evid. Code, §§ 452, subd. (b), 453; see *Shapiro v. Board of Directors* (2005) 134 Cal.App.4th 170, 174, fn. 2 [35 Cal.Rptr.3d 826] [taking judicial notice of municipal resolution]; *City of Modesto v. National Med, Inc.* (2005) 128 Cal.App.4th 518, 524, fn. 1 [27 Cal.Rptr.3d 215] [same].)

[2] All further statutory references are to the Government Code unless otherwise indicated.

Section 66474.2, subdivision (a) reads: "(a) Except as otherwise provided in subdivision (b) . . . , in determining whether to approve or disapprove an application for a tentative map, the local agency shall apply only those ordinances, policies, and standards in effect at the date the local agency has determined that the application is complete pursuant to Section 65943 of the Government Code." Subdivision (b) of section 66474.2 states: "Subdivision (a) shall not apply to a local agency which, before it has determined an application for a tentative map to be complete pursuant to Section 65943, has done both of the following: [¶] (1) Initiated proceedings by way of ordinance, resolution, or motion. [¶] (2) Published notice in the manner prescribed in subdivision (a) of Section 65090 containing a description sufficient to notify the public of the nature of the proposed change in the applicable general or specific plans, or zoning or subdivision ordinances. [¶] A local agency which has complied with this subdivision may apply any ordinances, policies, or standards enacted or instituted as a result of those proceedings which are in effect on the date the local agency approves or disapproves the tentative map."

Section 65943 requires a public agency to determine in writing within 30 days whether an application for a development project is complete, to notify an applicant of the manner in which an application can be made complete, and to provide a process for the applicant to appeal if the applicant's resubmission of an application is determined in writing by the agency not to be complete. Unless the agency makes its written determinations within 30 days, the application shall be deemed complete as a matter of law. (See § 65943, subds. (a), (b).) Section 65943, subdivision (c), provides that "[a] city or county shall provide that the right of appeal is to the governing body or, at their option, the planning commission, or both."

Section 65090, subdivision (a) provides in part that notice of public hearing "shall be published . . . in at least one newspaper of general circulation within the jurisdiction of the local agency which is conducting the proceeding at least 10 days prior to the hearing . . . ."

66474.2, subdivision (b) to trump rights Stonehouse claims it would otherwise have under section 66474.2, subdivision (a). The court concluded the City's alleged acts appeared to be "precisely what the statute [i.e., § 66474.2] visualizes."

The trial court further decided that Stonehouse was seeking an advisory decision in a controversy not yet ripe; the complaint neither asserted a takings claim nor alleged ultimate facts showing that the moratorium resolution is facially invalid or in violation of Stonehouse's due process rights or state housing laws; and Stonehouse failed to allege ultimate facts showing its application for a tentative map is complete or that the City has determined the application is complete.

Stonehouse received leave from the trial court to amend its complaint to address the defects noted by the court. Stonehouse elected not to amend its complaint. The court therefore issued an order of dismissal of the action. This timely appeal followed.

## CONTENTIONS

Stonehouse contends the demurrer should have been overruled because (1) the complaint challenges the validity of the moratorium resolution and therefore declaratory relief is appropriate, (2) there is no administrative remedy available that Stonehouse was required to exhaust, (3) its request for declaratory relief is ripe, (4) the complaint adequately alleges a claim the moratorium resolution is facially invalid, and (5) the City's motive may be considered when a substantive due process or equal protection claim is alleged. For the reasons discussed below, we conclude the complaint does not adequately allege an actual and present controversy and declaratory relief is not appropriate.

## STANDARD OF REVIEW

Our standard of review of an order of dismissal following the sustaining of a demurrer is well established. We treat the demurrer as admitting all material facts properly pleaded and matters subject to judicial notice, but not deductions, contentions, or conclusions of law or fact. (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126 [119 Cal.Rptr.2d 709, 45 P.3d 1171].) We also consider matters that may be judicially noticed. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) We give the complaint a reasonable interpretation, reading the complaint as a whole and

its parts in context. (*Ibid.*) When a demurrer is sustained with leave to amend but the plaintiff elects not to do so, we presume the complaint states as strong a case as the plaintiff can muster. (*Reynolds v. Bement* (2005) 36 Cal.4th 1075, 1091 [32 Cal.Rptr.3d 483, 116 P.3d 1162]; see *Chicago Title Ins. Co. v. Great Western Financial Corp.* (1968) 69 Cal.2d 305, 312 [70 Cal.Rptr. 849, 444 P.2d 481].) We will affirm if the trial court's decision to sustain the demurrer was correct on any theory. (*Hendy v. Losse* (1991) 54 Cal.3d 723, 742 [1 Cal.Rptr.2d 543, 819 P.2d 1]; *Kennedy v. Baxter Healthcare Corp.* (1996) 43 Cal.App.4th 799, 808 [50 Cal.Rptr.2d 736].)

The parties agree that, on appeal from a dismissal after an order sustaining a demurrer, the appellate court reviews the order de novo, exercising its independent judgment whether the complaint states a cause of action as a matter of law. (See *McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415 [106 Cal.Rptr.2d 271, 21 P.3d 1189]; *Montclair Parkowners Assn. v. City of Montclair* (1999) 76 Cal.App.4th 784, 790 [90 Cal.Rptr.2d 598].)[3]

## DISCUSSION

### THE COMPLAINT DOES NOT PRESENT A JUSTICIABLE CONTROVERSY

Respondents contend the trial court properly sustained the demurrer on the ground the complaint failed to state facts sufficient to state a cause of action against respondents, and the court's ruling was correct because a claim for declaratory judgment regarding the moratorium resolution was not ripe and did not present a justiciable controversy. We agree.

A declaratory relief action may be brought under Code of Civil Procedure section 1060, which provides that in cases of "actual controversy" relating to the legal rights and duties of the respective parties, a person who desires a declaration of his or her rights or duties with respect to property may bring an original action in the superior court for a declaration of his or her rights and duties in the premises. The court has discretion to refuse to entertain claims for declaratory relief when its declaration or determination is not necessary or proper at the time under the circumstances. (Code Civ. Proc., § 1061.)

---

[3] In any case, whether the appropriate standard of review is de novo or abuse of discretion makes no difference in the particular circumstances of this case, as we find the trial court's ruling correct under either standard. (See *City of Santa Monica v. Stewart* (2005) 126 Cal.App.4th 43, 58–59 [24 Cal.Rptr.3d 72] (*Stewart*).)

■ Whether a case is founded upon an "actual controversy" centers on whether the controversy is justiciable. "The principle that courts will not entertain an action which is not founded on an actual controversy is a tenet of common law jurisprudence, the precise content of which is difficult to define and hard to apply. The concept of justiciability involves the intertwined criteria of ripeness and standing. A controversy is 'ripe' when it has reached, but has not passed, the point that the facts have sufficiently congealed to permit an intelligent and useful decision to be made." (*California Water & Telephone Co. v. County of Los Angeles* (1967) 253 Cal.App.2d 16, 22–23 [61 Cal.Rptr. 618] (*California Water*), fns. omitted; see also *Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158, 170 [188 Cal.Rptr. 104, 655 P.2d 306] (*Pacific Legal*).)

■ "The ripeness requirement . . . prevents courts from issuing purely advisory opinions. [Citation.] It is rooted in the fundamental concept that the proper role of the judiciary does not extend to the resolution of abstract differences of legal opinion." (*Pacific Legal, supra*, 33 Cal.3d at p. 170; see *Coral Construction, Inc. v. City and County of San Francisco* (2004) 116 Cal.App.4th 6, 25–26 [10 Cal.Rptr.3d 65].)

■ To determine if a controversy is ripe, we employ a two-pronged test: (1) whether the dispute is sufficiently concrete that declaratory relief is appropriate; and (2) whether withholding judicial consideration will result in the parties suffering hardship. (*Pacific Legal, supra*, 33 Cal.3d at pp. 171–173; *Stewart, supra*, 126 Cal.App.4th at p. 59.) "Under the first prong, the courts will decline to adjudicate a dispute if 'the abstract posture of [the] proceeding makes it difficult to evaluate . . . the issues' [citation], if the court is asked to speculate on the resolution of hypothetical situations [citation], or if the case presents a 'contrived inquiry' [citation]. Under the second prong, the courts will not intervene merely to settle a difference of opinion; there must be an imminent and significant hardship inherent in further delay. [Citation.]" (*Farm Sanctuary, Inc. v. Department of Food & Agriculture* (1998) 63 Cal.App.4th 495, 502 [74 Cal.Rptr.2d 75]; see *Stewart, supra*, at p. 64.) In this case, the trial court correctly concluded the alleged controversy is not justiciable because Stonehouse's claims fail both prongs of the ripeness test.

Under the first prong, a declaration of "the legal rights and duties of the parties as they relate to the validity of the [moratorium resolution]" would require us, and would have required the trial court, to speculate about hypothetical future actions by the City, the city council and the planning commission.

Stonehouse contends the moratorium resolution was an "unequivocal instruction to prepare an ordinance" that was *required* to include specific zoning" substantially conforming to limitations expressed in the resolution. (Italics added.) In support of its argument, Stonehouse claims the moratorium resolution essentially comprised legislation by stating: "The City Council . . . hereby *directs* the Planning Commission . . . to prepare an ordinance . . . *that includes specific zoning* . . . which substantially *complies with the following specifications* . . . ." (Boldface omitted, italics added.) But the resolution does no such thing. Stonehouse has only partially quoted the relevant language of the city council's resolution, which actually states: "the City Council of the City of Sierra Madre hereby directs the Planning Commission, in conjunction with the [HMZ advisory committee], to prepare an ordinance, *as part of the final recommendations for amending* the [HMZ], that includes specific zoning and lot dimensions for new subdivisions in the [HMZ], which substantially complies with the following specifications: [listing specifications]." (Italics added.) The operative language of the moratorium resolution directs the planning commission and HMZ advisory committee to prepare *final recommendations* for an ordinance.

The moratorium resolution thus merely gave notice to the public of potential legislation that might be adopted in the future with respect to HMZ provisions. The adoption of the resolution alone implicated no rights of Stonehouse. The resolution was not an ordinance that amended the HMZ provisions. Nor did it require the planning commission to recommend adoption of such an ordinance. The moratorium resolution simply requested preparation of final recommendations regarding potential amendments to the HMZ provisions and provided notice to the public about changes under consideration. Under the city council's directives, the HMZ advisory committee was empowered to make recommendations regarding the listed concerns and was not restricted from submitting recommendations regarding additional concerns. The resolution did not refer to any development application of Stonehouse and could not have any consequence for such an application unless and until legislation is proposed, reviewed under CEQA, subjected to public hearings and formally adopted.

■ Under the allegations of the complaint, final recommendations have yet to be made by the planning commission or the HMZ advisory committee. At this stage, the court must speculate as to what legislation, if any, the City might adopt and whether and how that legislation might be applied to Stonehouse's property. "[A]n action for declaratory relief 'must be based on an actual controversy with known parameters. If the parameters are as yet unknown, the controversy is not yet ripe for declaratory relief. [Citation.]' [Citation.]" (*PG&E Corp. v. Public Utilities Com.* (2004) 118 Cal.App.4th 1174, 1218 [13 Cal.Rptr.3d 630].) The abstract posture of this case renders it too uncertain for a justiciable controversy. Stonehouse's complaint fails to

establish the alleged dispute is "sufficiently congealed to permit an intelligent and useful decision to be made." (*California Water, supra*, 253 Cal.App.2d at p. 22; see also *Pacific Legal, supra*, 33 Cal.3d at p. 171.)

■ Under the second prong, moreover, the trial court also correctly concluded the complaint failed to allege facts showing " 'an imminent and significant hardship inherent in further delay.' " (*Stewart, supra*, 126 Cal.App.4th at p. 64.) Besides the absence of concrete legal issues, the particular factual context has yet to be fully developed. Stonehouse contends the issue presented is whether its applications are protected by an alleged "safe harbor" provided by section 66474.2, subdivision (a) or whether the moratorium resolution takes its pending applications out of that safe harbor provision and subjects them to rezoning under section 66474.2, subdivision (b). The problem with Stonehouse's contention is that any alleged entitlement to a safe harbor is purely conjectural absent a final application, a newly adopted HMZ ordinance, and application of such an ordinance to Stonehouse. Section 66474.2 defines the ordinances, policies and standards a city must apply in approving or denying a completed application. However, section 66474.2, subdivision (a) applies only *after* a city deems a subdivision application to be complete, and Stonehouse admits the City had not determined its applications were complete as of the time of the filing of its complaint.

■ The mere fact that Stonehouse and respondents disagree over the resolution's meaning and application does not create a justiciable controversy. Courts may not render advisory opinions on disputes which the parties anticipate might arise but which do not presently exist. (*Teachers' Retirement Bd. v. Genest* (2007) 154 Cal.App.4th 1012, 1043–1044 [65 Cal.Rptr.3d 326]; *Stewart, supra*, 126 Cal.App.4th at p. 78.) For declaratory relief, the party must show it either has suffered or is about to suffer an injury of "sufficient magnitude reasonably to assure that all of the relevant facts and issues will be adequately presented." (*California Water, supra*, 253 Cal.App.2d at p. 23.)

■ Supposedly, unless the resolution is declared invalid at this point, Stonehouse would suffer "[a] loss of the certainty that [section 66474.2, subdivision (a)] was enacted to provide." Such uncertainty is not the type of justiciable controversy contemplated by the existing precedents. Stonehouse cannot demonstrate the resolution has resulted in any concrete effects upon it.[4]

---

[4] Our holding that the issues are not yet ripe should not be used by respondents as justification to drag their feet on Stonehouse's applications.

## DISPOSITION

The order of dismissal is affirmed. Respondents are to recover costs on appeal.

Cooper, P. J., and Rubin, J., concurred.