Filed 8/27/13  Mahaffey & Assoc. v. Angus Petroleum CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MAHAFFEY & ASSOCIATES, PLC,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>ANGUS PETROLEUM CORPORATION et al.,<br><br>    Defendants and Respondents. | G047654<br><br>(Super. Ct. No. 30-2011-00512798)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Steven L. Perk, Judge.  Affirmed.

Mahaffey Law Group and Douglas L. Mahaffey for Plaintiff and Appellant.

Gibson, Dunn & Crutcher, Robert E. Palmer, Linda D. Lam and Drew Harbur for Defendants and Respondents.

*        *        *

Mahaffey & Associates (Mahaffey) sued Angus Petroleum Corporation (Angus), its former client, along with Louis Zylstra, Jr., and Zylstra & Associates Engineering, Inc. (collectively defendants) for declaratory relief. Mahaffey sought declarations from the court regarding whether it could represent another client who was now adverse to Angus. The court sustained defendants' demurrer to Mahaffey's second amended complaint without leave to amend, ruling that no actual controversy existed and that Mahaffey was merely seeking an advisory opinion. We agree and therefore affirm.

I

FACTS

A. *Background*

In 2006, Mahaffey represented several creditors of South Coast Oil Corporation (South Coast), which eventually filed for bankruptcy. Those creditors included BG Operations, LLC (BG), its manager and owner, Bob W. Grayson, and Donald W. White, who, among other things, was a major shareholder in South Coast. One of South Coast's assets was the entirety of the stock of Angus Petroleum Corporation (Angus).

In March 2007, White was appointed as sole officer of Angus. White then hired Mahaffey to "handle on White's behalf Angus's CEO tasks."

On May 1, 2007, BG and Angus executed an independent contractor agreement with respect to the Springfield facility in Huntington Beach. Although the agreement was entitled "Independent Contractor Agreement," Mahaffey later referred to this as a "joint venture." In short, BG was to advance certain funds on Angus's behalf, and Angus agreed to repay the funds as soon as it had the capital to do so. BG, in turn, was to receive 25 percent of the net revenue from certain sales and activities.

On that same date, according to the operative complaint, "White and BG executed a Multiple Parties Conflict Waiver that stated in part that both parties waive the right to disqualify [Mahaffey] in the event of a dispute pertaining to the May 1 Angus/BG

2

contract." This waiver (the MPC waiver) was apparently signed by Bob Grayson on behalf of BG, and by White, on behalf of Angus.

In April 2009, Mahaffey filed *BG Operations, LLC v. XTO Offshore, Inc.* (Super. Ct. Orange County, 2009, No. 00122075). The complaint alleged that BG was Angus's agent with regard to the Springfield facility, and sought to foreclose on an oil and gas lien. A number of cross-complaints were subsequently filed.

In June 2009, Louis Zylstra was appointed a director and officer of Angus.

In July and August of 2009, respectively, BG and Angus executed a modification of the independent contractor agreement. The modification stated that the bankruptcy court (specifically, the bankruptcy court in the Central District of California) would have sole and exclusive jurisdiction to determine any dispute under either the independent contractor agreement or the modification agreement.

According to the operative complaint, on September 1, 2009, White and Zylstra, on Angus's behalf, and Grayson, on BG's behalf, signed a second conflict waiver involving the XTO case (the XTO waiver). This waiver concerned only the XTO case.

In January 2010, an oil spill caused by BG's contractor occurred at the Huntington Beach facility, and the Environmental Protection Agency (EPA) subsequently issued an order to mitigate the damage. In December 2010, Angus, BG, Grayson, and Grayson Services entered into a "Joint Interest Agreement." (Mahaffey refers to this document as "the third conflict waiver.") The essence of the joint interest agreement was to confirm the agreement among the parties to exchange information, documents, communications and discussions in defense of the EPA's order.

One paragraph of the joint interest agreement discussed the potential conflict of interest: "Angus and BG agree that Mahaffey may continue to represent Angus and BG in all matters which Mahaffey currently represents Angus and/or BG, including but not limited to defense of the EPA Claim and each agree to waive any conflict of interest that exist or may arise related to Mahaffey's continued representation

3

of Angus and/or BG in connection with any of the matters for which Mahaffey represents Angus and/or BG, including but not limited to the EPA claim."

In May 2011, Angus terminated Mahaffey's services as legal counsel. The operative complaint later alleged that beginning in April 2011, Zylstra engaged in "adverse conduct," which included directing his current attorney not to protect the interests of BG. According to defendants, Mahaffey thereafter, for the first time, asserted the "joint venture" theory of the independent contractor agreement. Mahaffey refused to step aside, and Angus instead filed motions in matters pending in three separate courts to remove Mahaffey as counsel. Two of those motions were granted.

One of the lawsuits from which Mahaffey refused to withdraw was the XTO litigation. In September 2011, the "2007 BC/Angus Joint Venture" attempted to intervene in that case. That case was subsequently settled and dismissed with prejudice by Angus and XTO. Thereafter, on the same day XTO filed an acknowledgment of satisfaction of judgment, BG filed a putative cross-complaint against a variety of entities and individuals, including those who had just dismissed their claims. Defendants successfully moved to quash, and the trial court noted the XTO litigation was dismissed in its entirety.

In June 2011, Angus initiated an adversary proceeding in South Coast's bankruptcy case against BG, Grayson, and Grayson Services. Among other things, it sought a declaration that no "joint venture" existed between Angus and BG. In February 2012, the bankruptcy court granted Angus's motion for partial summary judgment, finding the notion of a joint venture was "just not plausible."

B. The Instant Action

In October 2011, Mahaffey filed the instant action for declaratory relief against Angus, seeking a declaration that it did not have to provide Angus with "BG/Angus joint property," which apparently referred to a photocopy of the signed XTO

4

waiver. Angus demurred, and Mahaffey filed a first amended complaint, which added BG as a defendant. Mahaffey's first cause of action for declaratory relief was the same. In a second cause of action against Angus only, it sought a declaration regarding whether it could represent BG in the cross-complaint in the already dismissed XTO case. Angus filed another demurrer.

At around the same time, Angus also sought from Mahaffey, through normal discovery procedures, the production of all alleged conflict waivers signed by Angus. Mahaffey filed a motion to quash, and asked for $1,440 in sanctions. Angus filed its own motions to compel.

On January 23, 2012, the trial court denied Mahaffey's motion to quash and awarded Angus $2,245 in fees, granted Angus's motions to compel, and sustained Angus's demurrer. On February 21, Mahaffey produced copies of the joint interest agreement, the XTO waiver, the MPC waiver, and an Angus board resolution. On the same day, BG filed for protection under chapter 11 of the bankruptcy code.

On March 26, a "new" law firm, Mahaffey Law Group, APC[1] filed the second amended complaint (the complaint) for declaratory relief, once again naming Angus and BG, and for the first time, Zylstra and his entity Zylstra & Associates Engineering, Inc. (Z&A). In this complaint, Mahaffey sought declaratory relief regarding its rights and obligations as to the XTO waiver, the joint interest agreement, and the MPC waiver. Mahaffey stated that the matter was ripe because "BG is in litigation with Angus in various matters, both State and Federal, and BG seeks [Mahaffey] to associate in with and/or take over representation of BG in these matters."

Defendants filed a demurrer, arguing, among other things, that no controversy was ripe for review because Mahaffey had neither sought nor received permission from the bankruptcy trustee to represent BG, and Mahaffey had not alleged a

---

[1]     In the interests of simplicity, we will continue to refer to this law firm as simply "Mahaffey," as the change in entity does not impact our decision.

resulting hardship to Mahaffey if no ruling followed.  They also argued the conflict waivers were not a sufficient basis for declaratory relief.

At the hearing on the demurrer, Mahaffey raised a number of issues for the first time.  Mahaffey claimed that its failure to obtain approval to represent BG was irrelevant, because the complaint was also intended to obtain a declaration that it could represent Grayson and Grayson Services, which were not in bankruptcy.  Mahaffey also stated that Douglas L. Mahaffey, principal attorney, had called the State Bar ethics hotline, which told him to file the declaratory relief action if there was a concern about an ethical violation.

The court sustained the demurrer without further leave to amend.  The court determined the complaint "really is seeking an advisory opinion. . . .  The Court will not do that.  There is no actual controversy alleged by these facts nor can there be.  Until Mahaffey is actually retained to represent BG the issue presented by this action is nothing more than advisory. . . .  'Mahaffey' has no standing in this matter until he is retained.'" Mahaffey now appeals.

II

DISCUSSION

A. *Defendants' Request for Judicial Notice*

Before we move on to the substance of the appeal, we address defendants' request for judicial notice of 12 documents.  Mahaffey has objected to several of these requests.

With respect to the items as to which there was no objection, which are primarily documents that were part of the record in a trial court case involving the parties or otherwise relevant to this appeal, judicial notice is proper pursuant to Evidence Code sections 452, subdivision (d), and 459.  The remaining document is a page from the State Bar's Web site, which is subject to judicial notice under Evidence Code section 452,

6

subdivisions (c) and (h). The request is therefore granted as to exhibits 2, 5, 6, 7, 8, and 12.

The first items to which Mahaffey objects, exhibits 1, 3, and 11, are two unpublished decisions of this court (*Petrik v. Mahaffey* (June 9, 2011, G042114) [nonpub. opn.]) and *Grunder v. Mahaffey* (Nov. 7, 2012, G045013) [nonpub. opn.]) and a trial court minute order and verdict form (*Johnson v. Mahaffey* (Super. Ct. Orange County, 2011, No. 06CC04381)). Defendants offer these documents because in the hearing on the demurrer in this matter, Douglas Mahaffey told the court he received direction to file the instant declaratory relief action from the State Bar ethics hotline. He stated: "I need to make sure that I have taken every step to be certain I am not violating the canons of ethics." Defendants offer these cases to raise an inference suggesting that Douglas Mahaffey has not always acted according to such standards. But only relevant evidence is subject to judicial notice. (*Mangini v. R. J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063.) Even under that generous standard, these cases are simply not relevant to the issue of whether the declaratory relief action is ripe and justiciable. Thus, the request is declined as to exhibits 1, 3 and 11.

Mahaffey also objects to exhibit 4, a letter from Zylstra to Grayson on June 14, 2011, which stated that Angus was withdrawing from the joint interest agreement. Defendants argue that because the joint interest agreement was attached to and cited by the complaint, that document is not "complete" without the letter withdrawing from the agreement. Yet it was never presented below, and we too shall muddle through without it. A court will not normally take judicial notice of matters that were not brought to the attention of the trial court or presented to the trier of fact. (*Coy v. County of Los Angeles* (1991) 235 Cal.App.3d 1077, 1083, fn. 3.) The request is denied as to exhibit 4.

Next, Mahaffey objects to exhibit 9, the trial court's order granting partial summary judgment on the grounds there was no "joint venture" between Angus and BG. Mahaffey argues that defendants fail to point out the ruling is on appeal, and argue

defendants seek judicial notice of the truth of the facts therein. It is true that we may only take judicial notice only as to the existence of a document, not the truth of any matters that are asserted in it. (*Day v. Sharp* (1975) 50 Cal.App.3d 904, 914.) As a record of a federal court, the ruling is subject to judicial notice. (Evid. Code, § 452, subd. (d).) We therefore grant the request for judicial notice as to exhibit 9, subject to the usual limitations on judicial notice.

Finally, Mahaffey objects to judicial notice of exhibit 10, a declaration of William M. Burd, the general counsel to the trustee in BG's bankruptcy case. The declaration states that Mahaffey has not sought appointment as counsel of BG's estate. Defendants state this document was filed in the trial court as part of its demurrer and requested judicial notice at that time, but the court did not rule on the request. As part of the record in the trial court, it is subject to judicial notice (Evid. Code §§ 452, subd. (d), 459). Again, it is subject to the usual limits on judicial notice, principally, that we take notice of the existence of the document rather than the truth of any facts asserted therein. (*Day v. Sharp*, *supra*, 50 Cal.App.3d at p. 914.) The request is therefore granted as to exhibit 10.

In sum, defendants' request for judicial notice is granted as to exhibits 2, 5, 6, 7, 8, 9, 10, and 12, and denied as to exhibits 1, 3, 4, and 11.

## B. Standard of Review

"'[A] general demurrer is usually not an appropriate method for testing the merits of a declaratory relief action, because the plaintiff is entitled to a declaration of rights even if it is adverse to the plaintiff's interest.' [Citations.]" (*Qualified Patients Assn. v. City of Anaheim* (2010) 187 Cal.App.4th 734, 751.) Courts have, however, considered demurrers to declaratory relief actions when the question is whether the issues

on which a declaration were sought were ripe or presented a justiciable controversy. (*Stonehouse Homes LLC v. City of Sierra Madre* (2008) 167 Cal.App.4th 531, 539 (*Stonehouse*).)

The parties dispute whether the standard of review should be abuse of discretion or de novo, although in this case the difference is purely academic. We assume without deciding that de novo review is appropriate, and we therefore exercise our independent judgment to determine whether the complaint states a cause of action as a matter of law. (*Stonehouse*, *supra*, 167 Cal.App.4th at p. 539.) "We treat the demurrer as admitting all material facts properly pleaded and matters subject to judicial notice, but not deductions, contentions, or conclusions of law or fact. [Citation.] We also consider matters that may be judicially noticed. [Citation.] We give the complaint a reasonable interpretation, reading the complaint as a whole and its parts in context. [Citation.]" (*Id.* at pp. 538-539.)

## C. Justiciable Controversy

The statutory basis for declaratory relief in California is Code of Civil Procedure section 1060. Under that section, "in cases of actual controversy relating to the legal rights and duties of the respective parties," any person may bring an action for a declaration of his or her rights and duties in connection with that controversy. (Code Civ. Proc., § 1060.) "Declaratory relief is not available unless there is a real dispute between parties, 'involving justiciable questions relating to their rights and obligations.' [Citation.] 'The fundamental basis of declaratory relief is an actual, present controversy.' [Citation.] An actual controversy is 'one which admits of definitive and conclusive relief by judgment within the field of judicial administration, as distinguished from an advisory opinion upon a particular or hypothetical state of facts. The judgment must decree, not suggest, what the parties may or may not do.' [Citation.]" (*In re Claudia E.* (2008) 163 Cal.App.4th 627, 638.)

9

The test courts employ to determine whether an actual controversy exists is two-pronged. We ask "(1) whether the dispute is sufficiently concrete that declaratory relief is appropriate; and (2) whether withholding judicial consideration will result in the parties suffering hardship. [Citations.]" (*Stonehouse*, *supra*, 167 Cal.App.4th at p. 540.)

"'Under the first prong, the courts will decline to adjudicate a dispute if "the abstract posture of [the] proceeding makes it difficult to evaluate . . . the issues" [citation], if the court is asked to speculate on the resolution of hypothetical situations [citation], or if the case presents a "contrived inquiry" [citation].'" (*Stonehouse*, *supra*, 167 Cal.App.4th at p. 540.) Mahaffey's opening brief argues that "The [complaint] alleges that Grayson, the owner of BG had retained [Mahaffey] to represent him in the pending litigation against Angus, Zylstra and Z&A." On the page of the record cited by Mahaffey on this point, however, it is only alleged that "BG has requested [Mahaffey] represent BG in litigation against Angus, Zylstra, and [Z&A]." The complaint also alleged that Mahaffey has not yet accepted that representation.

BG is in a different position than Grayson. Defendants point out, and Mahaffey does not dispute, that Mahaffey has not sought permission to represent BG, which is in bankruptcy proceedings. Douglas Mahaffey stated in court that he does not intend to seek to such permission. Thus, any notion of representing BG is indeed hypothetical. "The ripeness necessary in the declaratory judgment statute's 'actual controversy' requirement [citation] 'does not embrace controversies that are "conjectural, anticipated to occur in the future, or an attempt to obtain an advisory opinion from the court."' [Citation.]" (*Del Cerro Mobile Estates v. City of Placentia* (2011) 197 Cal.App.4th 173, 186.) Currently, there is no lawsuit in which Mahaffey represents BG against defendants, and thus, there is no current controversy. Moreover, even if the court did issue a ruling on Mahaffey's declaratory relief claims, without any case or matter specified in the judgment, a different court would not be bound by such a judgment in a future motion to disqualify.

10

Further, Mahaffey has not met the second prong of the test set forth in *Stonehouse*, *supra*, 167 Cal.App.4th at page 540, which is whether the parties would suffer hardship in the absence of a judgment. (*Ibid*.) "'Under the second prong, the courts will not intervene merely to settle a difference of opinion; there must be an imminent and significant hardship inherent in further delay. [Citation.]' [Citation.]" (*Ibid.*) Mahaffey, in arguing the complaint sufficiently alleges such hardship, points to a paragraph that states that "BG has relied on that express and implicit waiver and has suffered economic harm to BG's detriment because of the implicit and express waivers of Angus, Zylstra, and [Z&A]."[2] That alleges harm to BG, which conflicts with Mahaffey's prior argument that it did not intend to represent BG during the duration of its bankruptcy. Mahaffey then asks us to impute the alleged harm to BG to Mahaffey. "Given the relationship between attorney and client, [Mahaffey] likewise would suffer the hardship of not being able to represent the client as the client requests and seeks." Mahaffey then cites cases recognizing the hardship to the *client* when an attorney is disqualified. None of this creates an inference of harm to *Mahaffey*, which is not alleged in the complaint.

Mahaffey does not cite a single case in which any attorney has brought an action against a former client to avoid hypothetical future ethical problems. It is not surprising that case law in this area is nonexistent, because what Mahaffey chose to do

_____

[2]     In quoting this paragraph, Mahaffey chose, in its brief, to add "[Grayson]" alongside BG on each occasion that BG was mentioned. BG and Grayson are not one and the same, and we decline to treat them as such.

Further, with respect to the alleged waivers by Zylstra and Z&A, the documents attached to the complaint belie any contention that either was a party to any of the waivers. Zylstra signed only the XTO waiver as "Director, Angus Petroleum Corporation" as opposed to Grayson, who signed it both "individually and as Manager of BG." Further, the XTO waiver applied only to that now settled case. Zylstra did not sign the MPC waiver or the joint interest agreement at all. Z&A is not a signatory to *any* of the waivers. Thus, even if Mahaffey had stated a cause of action against Angus, it has not stated one against either Zylstra or Z&A.

here is a surpassingly bad idea. Douglas Mahaffey's assertion that he did so on advice from the State Bar's ethics hotline does not relieve him from his own obligation to consider the propriety of this course of action.[3] There is a long-standing, relatively simple remedy for a client involved in current litigation with his or her former attorney on the other side. If the client believes the attorney has a conflict of interest, he or she can bring a motion to disqualify. Instead, Mahaffey decided to subject its former client to a long, costly, and completely meritless lawsuit. The trial court properly sustained the demurrer to the complaint.

### D. Leave to Amend

Mahaffey does not argue further leave to amend his complaint is warranted. Indeed, we find no reasonable probability that Mahaffey could amend its complaint to state a viable cause of action. The demurrer was therefore properly sustained without leave to amend. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

III

DISPOSITION

The judgment is affirmed. Defendants are entitled to their costs on appeal.


MOORE, J.

WE CONCUR:


O'LEARY, P. J.


IKOLA, J.

---

[3] The relevant page of the State Bar's Web site explicitly states that it "cannot provide legal counsel," but exists to "help[] lawyers identify and analyze their professional responsibilities."

12