Filed 5/12/16  Davis v. Calif. Reconveyance Co. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| STEVE DAVIS, as Co-trustee, etc., et al., | H040573<br>(Santa Cruz County<br>Super. Ct. No. CV165101) |
| Plaintiffs and Appellants, | |
| v. | |
| CALIFORNIA RECONVEYANCE COMPANY et al., | |
| Defendants and Respondents. | |

Plaintiffs and appellants Steve Davis and Peter Palmer are co-trustees of the Joseph R. Davis Hollister Hills Trust (collectively, the JRDHH Trust or the Trust).  They and plaintiff Mark Peterson brought an action against defendants California Reconveyance Company (CRC) and JPMorgan Chase Bank (Chase) to challenge defendants' attempted nonjudicial foreclosure on a Capitola cottage owned by Peterson. The gravamen of the operative second amended complaint was that defendants were determined to foreclose on the wrong property.  Plaintiffs alleged that the property given as security for the loan at issue was not Peterson's cottage but the cottage next door to it. That cottage was owned by the Trust, which acquired it subject to an existing deed of trust from Greg Flowers, the borrower/obligor on the loan at issue.

Defendants demurred to the complaint, arguing that the Trust lacked standing to assert any of its causes of action. The trial court sustained the demurrers and dismissed the Trust from the case. On appeal, the Trust contends that it properly alleged causes of action for declaratory and injunctive relief and violations of Civil Code section 2924[1] and that it could amend its complaint to cure the defects in its negligence cause of action. We affirm.

## I. Background

As this appeal follows the sustaining of a demurrer, we take the facts from the operative and earlier complaints, their exhibits, and matters judicially noticed. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 (*Blank*); *Dodd v. Citizens Bank of Costa Mesa* (1990) 222 Cal.App.3d 1624, 1627 (*Dodd*); *Berg & Berg Enterprises, LLC v. Boyle* (2009) 178 Cal.App.4th 1020, 1034 (*Berg*).)

Florine Katz and Anna Gamboa owned adjacent parcels of land on Hollister Avenue in Capitola. There were four cottages on the land, three on one parcel and one on the other parcel. In April 2006, Katz and Gamboa sold both parcels. Peterson bought the three-cottage parcel and Flowers bought the one-cottage parcel.

The 2006 grant deed to Peterson included the assessor's parcel number (APN 036-125-09) and the legal description of the property: "Lot 7, in Block X, as shown upon that certain map entitled, 'Capitola,' filed for record in the office of the County Recorder on April 26, 1888, in Map Book 10, page 13, Santa Cruz County records." The grant deed did not include a street address. When Peterson obtained insurance policies for the three cottages, he identified them as 206 Hollister 1, 206 Hollister 2, and 206 Hollister 3.

The 2006 grant deed to Flowers is not included in the record on appeal. The complaint alleged that the grant deed did not include a street address. In July 2007,

---

[1] Further statutory references are to the Civil Code unless otherwise stated.

Flowers "deeded his property out of his revocable trust in order to refinance with Washington Mutual" (WaMu). That grant deed is not included in the record on appeal but the complaint alleged that it did not include a street address.

Flowers refinanced his property on July 27, 2007, executing a note and deed of trust in favor of WaMu. The deed of trust included the assessor's parcel number (APN 036-125-10) and the legal description of the Flowers property: "Lot 5, in Block X, as shown upon that certain map entitled, 'Capitola,' filed for record in the office of the County Recorder on April 26, 1888, in Map Book 10, page 13, Santa Cruz County records." The deed of trust listed the street address of the Flowers property as "206 Hollister Avenue 1." The complaint alleged that this address was "erroneous and in fact describe[d] the Peterson property next door."

Flowers deeded the property back to his revocable trust after he refinanced. That grant deed included the assessor's parcel number (APN 036-125-10) and the legal description ("Lot 5, in Block X . . . .") but no street address.

On November 1, 2007, Flowers conveyed his cottage to the Trust. The grant deed did not include a street address.

WaMu failed in 2008 and the Federal Deposit Insurance Corporation (FDIC) was appointed receiver. On September 25, 2008, Chase purchased substantially all of the assets of the failed bank from the FDIC, including its loan portfolio.

On December 15, 2008 and "many times thereafter," the Trust informed WaMu "that [the Trust] had bought the Flowers property; had been making mortgage payments for months and desired to continue to make such payments." "[WaMu] never responded." Copies of checks made payable to WaMu were attached as exhibit 10 to the complaint. Seven checks written between January 15, 2008 and August 26, 2008 referenced the Flowers loan number. Those checks totaled $14,514.61. Nine checks referenced a different and unidentified loan number.

3

In March 2009 "and several times thereafter," Flowers's bankruptcy counsel notified WaMu that the note and deed of trust "incorrectly identified the Flowers property." Counsel "reiterated that the JRDHH Trust currently owned the property; had made payments to [WaMu] for many months and wished to continue to do so." WaMu did not respond and "never attempted to reform or otherwise correct the erroneous address" in the Flowers deed of trust.

In early 2009, Flowers filed for bankruptcy protection under the United States Bankruptcy Code. His chapter 7 discharge was entered on April 18, 2009, and his bankruptcy case was closed that same day.

On May 12, 2009, CRC recorded a notice of default and election to sell under the Flowers deed of trust. The notice referenced the Flowers loan number and the assessor's parcel number for the Flowers property. It described the street address of the property as "206 Hollister Avenue 1." It stated that $16,663.23 was owing on the loan as of May 5, 2009.

On August 13, 2009 CRC posted a notice of trustee's sale "on the front of Mark Peterson's property at 206 Hollister Avenue 1." Flowers's bankruptcy counsel notified Chase and CRC that they had posted the wrong property and that the notice included an erroneous street address. On August 17, 2009 and thereafter, the Trust's and Peterson's trial counsel Richard Vaught informed CRC about the errors and about "the continued willingness of the JRDHH Trust to assume and/or modify the [Flowers deed of trust]." Neither Chase nor CRC responded.

On September 3, 2009, Peterson and the Trust sued Chase and CRC for damages and equitable relief. Based on the above-described facts, the complaint purported to assert causes of action for (1) declaratory relief ("specifically, a determination that the Deed of Trust does not secure 206 Hollister Avenue 1 and Chase cannot foreclose on 206 Hollister Avenue 1"); (2) injunctive relief; (3) negligence; (4) violations of sections 2923.5 and 2924 as to the Trust only; (5) slander of title as to Peterson only, and (6) quiet

4

title as to Peterson only. Plaintiffs obtained a temporary restraining order prohibiting defendants from attempting to foreclose on Peterson's property.

Defendants demurred to the complaint and plaintiffs elected to file a first amended complaint instead of an opposition. Defendants demurred to the first amended complaint on the ground that it failed to state facts sufficient to constitute any cause of action. On March 19, 2010, the trial court overruled defendants' demurrer to the first amended complaint.

On January 3, 2012, the trial court issued a preliminary injunction enjoining defendants from foreclosing on Peterson's property. In August 2012, defendants recorded a new notice of trustee's sale and posted it on the door of Peterson's property.

In mid-2013, the trial court denied defendants' motion for summary judgment or summary adjudication, concluding among other things that triable issues of fact existed with respect to whether defendants owed any duty to the Trust as to any of the four causes of action asserted by the Trust.

Plaintiffs filed a second amended complaint in late August 2013. It asserted the same causes of action and prayed for the same relief as the prior complaints but added allegations relating to defendants' posting of new notices on Peterson's property. The complaint alleged that the posting interfered with Peterson's wish to sell his property by informing "the entire neighborhood that the house with the notice nailed on the door was in default and would be foreclosed upon . . . ."

Defendants demurred to the second amended complaint on the ground that the Trust lacked standing to assert any of its causes of action. The trial court sustained the demurrers without leave to amend and dismissed the Trust from the case. The Trust filed a timely notice of appeal.

5

## II.  Discussion

### A.  Standard of Review

"In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules.  'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.  [Citation.]' " (*Blank*, *supra*, 39 Cal.3d at p. 318.)  "[F]acts appearing in exhibits attached to the complaint will also be accepted as true and, if contrary to the allegations in the pleading, will be given precedence." (*Dodd*, *supra*, 222 Cal.App.3d at p. 1627.)  " 'We also consider matters which may be judicially noticed.' [Citation.]." (*Blank*, at p. 318.)  "[A]ssertions contradicted by judicially noticeable facts" will not be accepted as true. (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 20.)  "[W]e give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.  [Citation.]" (*Blank*, at p. 318.)  " 'Specific factual allegations modify and limit inconsistent general statements.' [Citation.]" (*Alfaro v. Community Housing Improvement System & Planning Assn., Inc.* (2009) 171 Cal.App.4th 1356, 1371 (*Alfaro*).)  "Where, as here, a demurrer is to an amended complaint, we may consider the factual allegations of prior complaints, which a plaintiff may not discard or avoid by making ' " 'contradictory averments, in a superseding, amended pleading.' " ' [Citation.]" (*Berg*, *supra*, 178 Cal.App.4th at p. 1034.)

We "review the complaint de novo to determine . . . whether or not the trial court erroneously sustained the demurrer as a matter of law.  [Citation.]" (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 879.)  "We will affirm if there is any ground on which the demurrer can properly be sustained, whether or not the trial court relied on proper grounds or the defendant asserted a proper ground in the trial court proceedings." (*Martin v. Bridgeport Community Assn., Inc.* (2009) 173 Cal.App.4th 1024, 1031 (*Martin*).)  On appeal, " 'the plaintiff bears the burden of demonstrating that the trial court

6

erred.' [Citation.]" (*Zipperer v. County of Santa Clara* (2005) 133 Cal.App.4th 1013, 1020.)

When a demurrer is sustained without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm." (*Blank*, *supra*, 39 Cal.3d at p. 318.) "The burden of proving such reasonable possibility is squarely on the plaintiff." (*Ibid*.) "Plaintiff must show in what manner he can amend his complaint and how that amendment will change the legal effect of the pleading." (*Cooper v. Leslie Salt Co.* (1969) 70 Cal.2d 627, 636 (*Cooper*).) The showing need not be made in the trial court so long as it is made to the reviewing court. (*Dey v. Continental Central Credit* (2008) 170 Cal.App.4th 721, 731; Code Civ. Proc., § 472c.)

## B. First Cause of Action for Declaratory Relief

The Trust asserts that it "has standing to bring and properly pleaded a cause of action for declaratory relief." We disagree.

" 'The fundamental basis of declaratory relief is the existence of an *actual*, *present controversy* over a proper subject.' [Citation.]" (*City of Cotati v. Cushman* (2002) 29 Cal.4th 69, 79 (*City of Cotati*); Code Civ. Proc., § 1060.) "[B]oth standing and ripeness are appropriate criteria in that determination." (*Otay Land Co. v. Royal Indemnity Co.* (2008) 169 Cal.App.4th 556, 563.) "Standing is the threshold element required to state a cause of action . . . ." (*Martin*, *supra*, 173 Cal.App.4th at p. 1031.) "To have standing to sue, a person . . . must ' "have a real interest in the ultimate adjudication because [he] has [either] suffered [or] is about to suffer an injury of sufficient magnitude reasonably to assure that all of the relevant facts and issues will be adequately presented." [Citation.]' [Citation.]" (*Ibid.*)

7

"To determine if a controversy is ripe, we employ a two-pronged test:  (1) whether the dispute is sufficiently concrete that declaratory relief is appropriate; and (2) whether withholding judicial consideration will result in the parties suffering hardship.  [Citations].  'Under the first prong, the courts will decline to adjudicate a dispute if "the abstract posture of [the] proceeding makes it difficult to evaluate . . . the issues" [citation], if the court is asked to speculate on the resolution of hypothetical situations [citation], or if the case presents a "contrived inquiry" [citation].  Under the second prong, the courts will not intervene merely to settle a difference of opinion; there must be an imminent and significant hardship inherent in further delay.  [Citations.]' " (*Stonehouse Homes LLC v. City of Sierra Madre* (2008) 167 Cal.App.4th 531, 540 (*Stonehouse*).)

" '[A]n actual, present controversy must be pleaded specifically' and 'the facts of the respective claims concerning the [underlying] subject] must be given.'  [Citations.]" (*City of Cotati*, *supra*, 29 Cal.4th at p. 80.)  "Whether a claim presents an 'actual controversy' within the meaning of Code of Civil Procedure section 1060 is a question of law that we review de novo."  (*Environmental Defense Project of Sierra County v. County of Sierra* (2008) 158 Cal.App.4th 877, 885.)

Here, Peterson and the Trust jointly asserted that an actual controversy existed between the parties "concerning their respective right[s] and duties" under the Flowers deed of trust.  They averred that the deed of trust "was created improperly" and "contain[ed] an erroneous street address . . ." because Flowers "did not own and in fact had no interest in 206 Hollister 1 at the time he executed the Deed of Trust, or ever."  Peterson and the Trust prayed for "a judicial determination of the right[s] and responsibilities of the parties, specifically a determination that the Deed of Trust does not secure 206 Hollister Avenue 1 and Chase cannot foreclose on 206 Hollister Avenue 1."

When read in the context of the complaint as a whole, these allegations describe an actual controversy over defendants' right to foreclose on 206 Hollister Avenue 1.  But

8

on the facts alleged, only Peterson had standing to assert that cause of action. He owned cottage No. 1. According to the complaint, the deed of trust listed the street address of the Peterson property, defendants twice posted foreclosure sale notices on Peterson's cottage No. 1, and they "remain[ed] unwilling" to rescind the notice of default or to cancel the trustee's sale. Thus, as alleged in the complaint, Peterson had "'"a real interest in the ultimate adjudication"'" of the controversy. (*Martin*, *supra*, 173 Cal.App.4th at p. 1031.) The controversy was also ripe. There was "'an imminent and significant hardship inherent in further delay'" in adjudicating the controversy because Peterson was threatened with the loss of his property if the scheduled sale proceeded. (*Stonehouse*, *supra*, 167 Cal.App.4th at p. 540.)

The complaint alleged no similar facts with respect to the Trust. There were no allegations that Flowers or the Trust had any interest in cottage No. 1. The complaint affirmatively alleged that they did not. There was no allegation that defendants were seeking to foreclose on cottage No. 4, which the Trust owned. On the contrary, the complaint alleged that WaMu and Chase had ignored all advisements about the "erroneous" street address on the deed of trust, "never attempted to reform or otherwise correct" it, and continued to post foreclosure notices on the "wrong property." Consistent with these allegations, the Trust emphasizes on appeal that defendants remain "determined" to foreclose on the "wrong" property. These facts do not describe an "actual controversy relating to the legal rights and duties" of the Trust. (Code Civ. Proc., § 1060.) They do not describe a situation where "withholding judicial consideration will result in the [Trust] suffering hardship." (*Stonehouse*, *supra*, 167 Cal.App.4th at p. 540.) In short, they do not describe "an *actual*, *present controversy*" affecting the Trust. (*City of Cotati*, *supra*, 29 Cal.4th at p. 79.) On this record, the trial court properly concluded that the Trust lacked standing to assert its declaratory relief cause of action.

The Trust maintains that "there is an actual controversy regarding the parties' rights and duties" because it contends "that the WaMu deed of trust is void and that

9

Defendants cannot pursue any foreclosure proceedings under that trust deed, whereas Defendants contend that the WaMu deed of trust is enforceable and that they are entitled to conduct foreclosure proceedings under that instrument." This argument sweeps too broadly. The existence of an actual, present controversy "'must be pleaded specifically'" and the facts of the parties' respective claims about the dispute "'must be given.'" (*City of Cotati*, *supra*, 29 Cal.4th at p. 80.) Here, the complaint alleges an actual, present controversy over defendants' right to foreclose on the Peterson property. It does not allege a broader dispute.

The Trust points to its allegations that the deed of trust is void because it does not sufficiently describe the Flowers property and did not have the legal description attached when Flowers signed it. It contends that these allegations entitle it to a declaration that defendants "have no right to foreclose on *any* property—the correct property or the wrong property—under the WaMu deed of trust." (Italics added.) We disagree.

We have already determined that the Trust lacks standing to challenge defendants' right to foreclose on Peterson's property. We have also determined that the complaint does not plead an actual, present controversy about defendants' right to foreclose on what the Trust asserts is "the correct property." In its appellate briefs, the Trust implicitly concedes the absence of any such controversy. It emphasizes that defendants are "determined" to foreclose not on the Trust's property but instead on the "wrong" property. It suggests that defendants "*could* come to their senses" or that they "*may*" be ordered by a court to foreclose on the "right" property. (Italics added.) It posits that "[i]f defendants foreclose on the Trust's property," the Trust will lose all right, title and interest in that property. All of this is speculation. Courts properly decline to decide disputes where they are asked "'to speculate on the resolution of hypothetical situations.'" (*Stonehouse*, *supra*, 167 Cal.App.4th at p. 540.) The Trust lacks standing at this juncture to ask for a declaration about defendants' right to foreclose on what the Trust asserts is "the correct property." Any such challenge is not yet ripe. (*Ibid.*)

10

The Trust argues that "courts frequently and routinely decide cases where a property owner has brought a declaratory relief action to resolve the validity of a lien on his or her property." It string cites four cases, asserting that "[l]ike the plaintiffs in those four cases, the Trust has standing to litigate the validity of the WaMu deed of trust on the Trust's property in a declaratory relief action." None of the cases helps the Trust because standing was not raised as an issue in any of them. "Obviously, cases are not authority for propositions not considered therein." (*Roberts v. City of Palmdale* (1993) 5 Cal.4th 363, 372 (*Roberts*).)

The Trust argues that it could amend its complaint to "allege, in its declaratory relief cause of action, that there has been no default under the WaMu deed of trust because the Trust has paid or tendered all loan payments due under the Flowers note to WaMu and, as a result, that note is current." It claims that it has standing as a property owner to protect its rights, and it asserts that "[t]he issue[s] of the enforceability of the WaMu deed of trust and the existence of a default on the Flowers note to WaMu are ripe now." We disagree. The complaint alleged that defendants were proceeding against Peterson's property notwithstanding the Trust's repeated advisements that Peterson's property is the wrong property. The Trust emphasizes on appeal that defendants are "determined" to foreclose on Peterson's property. In these circumstances, the issue of the enforceability of the deed of trust against the Trust's property is not yet ripe. Thus, the Trust lacks standing to pursue its declaratory relief cause of action.

The cases on which the Trust relies do not change our conclusion. Standing was not raised as an issue in any of them. Thus, they have no application here. (*Roberts*, *supra*, 5 Cal.4th at p. 372.) We conclude that the trial court properly sustained defendants' demurrer to the Trust's declaratory relief cause of action.

11

## C. Second Cause of Action for Injunctive Relief

The Trust contends that the trial court erred in sustaining the demurrer to its cause of action for injunctive relief.  We disagree.

"Injunctive relief is a remedy and not, in itself, a cause of action, and a cause of action must exist before injunctive relief may be granted."  (*Shell Oil* v. *Richter* (1942) 52 Cal.App.2d 164, 168.)  The Trust concedes this point but argues that it "properly pleaded its claim for declaratory relief," which "can be the underlying cause of action for a permanent injunction claim."  The argument lacks merit.  We have concluded that the trial court properly sustained defendants' demurrer to the Trust's declaratory relief cause of action.  Thus, there is nothing on which the Trust can predicate a claim for injunctive relief.

## D. Third Cause of Action for Negligence

The Trust based its third cause of action on defendants' allegedly negligent drafting of the deed of trust and foreclosure notices.  The Trust concedes that the demurrer to that cause of action was properly sustained.  It contends, however, that the trial court abused its discretion in denying leave to amend.  It claims that it "can amend its complaint to allege that the lenders negligently processed the Trust's loan payments and tenders of payments and negligently declared the [Flowers] loan to be in default."  Defendants respond that they had no duty to allow the Trust to assume the Flowers loan.  We agree with defendants.

" 'The elements of a cause of action for negligence are . . . "(a) a *legal duty* to use due care; (b) a *breach* of such legal duty; [and] (c) the breach as the *proximate or legal cause* of the resulting injury." ' "  (*Ladd v. County of San Mateo* (1996) 12 Cal.4th 913, 917.)  "Liability for negligent conduct may only be imposed where there is a duty of care owed by the defendant to the plaintiff or to a class of which the plaintiff is a member.  [Citation.]  A duty of care may arise through statute or by contract.  Alternatively, a duty

12

may be premised upon the general character of the activity in which the defendant engaged, the relationship between the parties or even the interdependent nature of human society." (*J'Aire Corp. v. Gregory* (1979) 24 Cal.3d 799, 803.) " 'The existence of a duty is a question of law for the court.' [Citation.]" (*Melton v. Boustred* (2010) 183 Cal.App.4th 521, 531.)

Here, the Trust asserts that defendants "had a duty to the Trust to properly record its payments and tenders of payments [on the Flowers loan] to avoid the declaration of a default when there was no default." We disagree.

The Trust does not specify the source of the claimed duty. It cannot be contractual, because the Trust does not and cannot allege that it was ever a party to the note or deed of trust. Flowers, not the Trust, was the borrower/obligor on the loan, and any duties that the lender owed under the note and deed of Trust were owed to Flowers, not to the Trust. The Trust has no rights under the deed of trust.

Flowers did not transfer his rights under the deed of trust when he transferred his cottage to the Trust. He could not do so, because the deed of trust that he signed provided that only a "Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument." The deed of trust also provided that "Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing." The complaint does not allege a written agreement releasing Flowers from his obligations under the note and deed of trust. Nor does it allege that the Trust assumed Flowers's loan obligations in a writing approved by the lender. The Trust conceded at the hearing below that it could not allege a written assumption agreement. Thus, Flowers remained the borrower/obligor on the loan even after the Trust acquired the Flowers property.

The fact that the Trust allegedly made payments on the Flowers loan "from December 2007 through December 2008" does not change the analysis. "In order to

13

complete a novation successfully by the substitution of one debtor for another, the creditor must consent to it. [Citation.] The acceptance of payments from the new owner does not amount to a contract to release the original debtor." (*University of Redlands v. Ford* (1942) 56 Cal.App.2d 151, 152.) Thus, the Trust cannot allege a contractual basis for the duty it claims defendants owe it. (See *Cornelison* v. *Kornbluth* (1975) 15 Ca1.3d 590, 596-597.)

To the extent the Trust contends that section 2924c required defendants to credit the Trust's payments to avoid declaring a default on the Flowers loan, we disagree. The Trust cites that section and several cases in its reply brief to support its assertion that "a lender *must* accept loan payments from a non-borrower and, if the lender refuses to do so, the non-borrower's tender of loan payments counts the same as a loan payment accepted by the lender." (Italics added.) Neither the statute nor the cases supports that broad proposition.[2]

Section 2924c comes into play after an obligation secured by a deed of trust "has . . . been declared due by reason of default in payment . . . ." (§ 2924c,

---

[2]     In *Munger v. Moore* (1970) 11 Cal.App.3d 1, the owner of property subject to a second deed of trust learned that the note was in default "and timely tendered . . . the sum needed to cure the default." (*Id.* at pp. 5-6.) The court held that he had the right as the successor-in-interest to the trust property to cure a default of the obligation within the time prescribed by section 2924c "and to institute the instant action for damages for the illegal sale which resulted from the failure to accept the timely tender." (*Id.* at p. 8.) In *Magnus v. Morrison* (1949) 93 Cal.App.2d 1, the plaintiff purchasers of a property encumbered by a deed of trust learned that the note was in default and promptly tendered the amount "sufficient to comply with the requirements of [former] section 2924c . . . ." (*Id.* at p. 2.) The court held that this was sufficient to cure the default. (*Ibid.*) In *Bisno v. Sax* (1959) 175 Cal.App.2d 714, the court held that the tender of the amount in default was not deficient for failure to include $500 for attorneys' fees where the notice of default did not mention those fees. (*Id.* at pp. 724-725.) *Lichty v. Whitney* (1947) 80 Cal.App.2d 696 stands for the proposition that the holder of a second deed of trust can extinguish the superior lien and prevent foreclosure by tendering the entire amount owing on the debt to the first trust deed holder. (*Id.* at pp. 700-702.) *Wiemeyer v. Southern Trust & Commerce Bank* (1930) 107 Cal.App. 165, 173 stands for the proposition that the executor of a deceased trustor's estate can extinguish a mortgage lien and prevent foreclosure by tendering the entire amount owing to the lender. (*Ibid.*) None of these cases requires a lender to accept monthly payments from a nonparty to the note and deed of trust who asserts that the loan is not in default. None of these cases is on point here.

14

subds. (a)(1), (e).) It provides a time window in which the borrower/obligor or its "successor in interest in the . . . trust property" can pay "the entire amount due, at the time payment is tendered," in order to reinstate the loan. (*Ibid.*; *Napue v. Gor-Mey West, Inc.* (1985) 175 Cal.App.3d 608, 614.) Here the Trust argues that it made payments on the Flowers loan "from December 2007 through December 2008." This was well before the May 12, 2009 recording of the notice of default on the Flowers loan, so section 2924c was not implicated.

The Trust also argues that it "continued to tender the monthly loan payments" after WaMu informed the Trust in December 2008 that it would no longer accept them. This was not a payment or tender of "the entire amount due at the time payment is tendered." (§ 2924c, subd. (a)(1).) The Trust does not allege or argue that it tendered the entire amount of the arrearage after the notice of default was recorded. Significantly, it does not allege or argue that it asked defendants in writing to tell it the amount of the arrearage. (See Civ. Code, § 2924c(b)(1) ["[u]pon your written request, the [lender] will give you a written itemization of the entire amount you must pay."].) Thus, it cannot rely on section 2924c. We conclude that the Trust failed to meet its burden of showing that it could amend its complaint to allege a duty on the part of defendants to credit the Trust's payments to the Flowers loan to avoid a default. (*Cooper*, *supra*, 70 Cal.2d at p. 636.)

Even if the Trust could allege a duty that defendants breached, it has not explained how it could amend its complaint to allege resulting damage. It asserts that *if* defendants conduct a foreclosure sale of the Flowers cottage, their alleged negligence "will have caused" the Trust to lose its loan payments and its property. There is no allegation nor does the Trust argue that defendants have foreclosed or seek to foreclose on the Trust's property. Because the Trust cannot amend its complaint to allege the necessary elements of duty or damages, the trial court properly sustained the demurrer to the Trust's negligence cause of action without leave to amend.

15

## E.  Fourth Cause of Action for Violation of Section 2924

The Trust contends that the trial court erred in sustaining the demurrer to its fourth cause of action for lack of standing.  We disagree.

Section 2924 requires a notice of default to include "[a] statement identifying the mortgage or deed of trust . . . or a description of the mortgaged or trust property." (§ 2924, subd. (a)(1)(A).)  The Trust asserts that defendants violated this section because the notice of default included the wrong property address.  It argues that it has standing as a property owner to contest the validity of the deed of trust because it "may" suffer injury from defendants' allegedly defective notice of default, since the foreclosure proceedings "could" result in the Trust losing its property "if" a court orders defendants to foreclose on the "right" property.[3]  We have already rejected this standing argument in the context of the Trust's assertions that it had standing to contest whether the note was in default. (*Ante*, at pp. 7-9.)

The same reasoning applies here.  The Trust lacks standing to challenge the validity of the notice of default vis-à-vis Peterson's property because it has no interest in that property.  It lacks standing to challenge the validity of the notice of default vis-à-vis its own property because, as the allegations of the complaint and its arguments on appeal implicitly concede, defendants are not attempting to foreclose on the Trust's property. Instead, they are "determined" to foreclose on the "wrong" property.  Thus, any challenge

---

[3]     The fourth cause of action also alleged that defendants violated section 2923.5 by never contacting the Trust or attempting to modify the loan with the Trust.  The Trust does not mention section 2923.5 on appeal.  Consequently, we deem its section 2923.5 argument abandoned.  (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785 (*Badie*) ["When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived"]; *Title Guarantee & Trust Co. v. Fraternal Finance Co.* (1934) 220 Cal. 362, 363 [on appeal from judgment based on order striking answer as sham granting plaintiff's motion for judgment on the pleadings, deeming reliance on denials in answer abandoned where "appellant in its brief makes no attempt to show that any allegation of its answer, except the affirmative allegation above referred to, raised a material issue upon which appellant was entitled to a trial."].)

to a foreclosure of the Trust's property is premature.  The trial court properly sustained defendant's demurrer to the Trust's fourth cause of action.

## F.  Sixth Cause of Action[4]

The trial court sustained defendants' demurrer to the Trust's sixth cause of action for "negligence" in refusing "to negotiate in good faith toward foreclosure avoidance." (Capitalization & boldface omitted.)  The court ruled that there is no common law duty to negotiate in good faith to avoid a foreclosure, and even if there were, "[a]ny duty to negotiate a loan modification would be owed to Flowers and not the [T]rust or Davis." The Trust does not challenge or even address that ruling in its appellate briefs.  We deem any such challenge waived.  (*Badie*, *supra*, 67 Cal.App.4th at pp. 784-785.)

## III.  Disposition

The judgment is affirmed.

---

[4]    As Peterson is not a party to this appeal, we need not discuss the fifth cause of action for slander of title or the seventh cause of action for quiet title.  Those causes of action were asserted by Peterson only.

_____

Mihara, J.


WE CONCUR:




_____

Bamattre-Manoukian, Acting P. J.




_____

Márquez, J.




*JRDHH Trust v. California Reconveyance Co., et al.*
H040573


18